IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>v.<br><br>GRINNELL COLLEGE, BAILEY ASBERRY, as Agent of Grinnell College, BEN NEWHOUSE, as Agent of Grinnell College, SARAH NEWELL, as Agent of Grinnell College, ERIK KOHL, as Agent of Grinnell College, ANNE HARRIS, as Agent of Grinnell College, DEANNA SHORB, as Agent of Grinnell College, DEMETRIUS PETERSON, as Agent of Grinnell College,<br><br>        Defendant. | Case No. 4:23-cv-00400<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

COMES NOW, the Plaintiff, Jane Doe ("Jane"), by and through the undersigned legal counsel, and hereby states the following for her Complaint against the Defendant, Grinnell College:

## INTRODUCTION

1.      Jane was a student at Grinnell College from September of 2018 until May of 2022. On April 20, 2019, during the spring semester of her freshman year, Jane was violently raped in her dorm room on Grinnell's campus. Approximately two weeks later, she was sexually assaulted by the same perpetrator at an off-campus party. Following these incidents, Jane sought treatment for sexual trauma through Grinnell's student health program, sought assistance from Grinnell's administration, and ultimately filed a formal complaint through Grinnell's Title IX program. Grinnell's response to the incident was woefully inadequate, inept, and untimely. The

Title IX process dragged on through the *entire duration* of Jane's attendance at Grinnell, with a superficial sanction ultimately being entered against the perpetrator only in the final days before Jane's (and the perpetrator's) graduation in 2022. As a direct and proximate result of Grinnell's failures, Jane has suffered significant trauma, lost the substantial benefit of her Grinnell educational experience, and suffered economic harm including ongoing mental health expenses and attorney fees.

## THE PARTIES

2.      Jane is a natural person residing in the State of Iowa. During the events described herein, Jane was a student at Grinnell College. Jane resided in Grinnell, Iowa from August 2018 until March 2020, when the campus was closed due to the coronavirus pandemic. Due to the allegations further described herein, Jane did not return to Grinnell's campus after her departure in March 2020. Jane graduated from Grinnell College in May of 2022.

3.      Defendant Grinnell College ("Grinnell") is a private liberal arts college located in Grinnell, Iowa. It is the recipient of state and federal grants and contracts.

4.      Defendant Bailey Asberry is Grinnell College's Title IX Coordinator.

5.      Defendant Ben Newhouse is the Dean of Students at Grinnell College.

6.      Defendant Sarah Newell is a Grinnell College Nurse.

7.      Defendant Erik Kohl is a Licensed Mental Health Counselor working with Grinnell College students.

8.      Defendant Anne Harris is the President of Grinnell College.

9.      Defendant Deanna Shorb is the Dean of Religious Life at Grinnell College.

10.     Defendant Demetrius Peterson is an attorney and acted as the investigator for Jane's Title IX complaint.

## JURISDICTION AND VENUE

11.     This Court has federal and supplemental jurisdiction pursuant to 28 U.S.C. §

1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367 because: (i) the case arises under the laws of the

United States; (ii) the claims brought under Title IX of the Educational Amendments of 1972, 20

U.S.C. § 1681 et seq., and 42 U.S.C. § 1983 are civil rights claims; and (iii) the state law claims

are so closely related to the Title IX and 42 U.S.C. § 1983 federal law claims as to form the same

case or controversy under Article III of the U.S. Constitution.

12.     This Court has personal jurisdiction over Defendants on the grounds that

Defendants are conducting business within the State of Iowa and/or reside in the State of Iowa.

13.     Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391

because the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

14.     Jane graduated from an out-of-state high school in May of 2018 and matriculated

at Grinnell as a freshman in September of 2018.

15.     Jane was drawn to Grinnell due to Grinnell's strong liberal arts tradition and her

family connection to the state of Iowa.

### The Sexual Assaults

16.     On April 20, 2019, Jane was violently raped in her dormitory on Grinnell's

campus.

17.     The perpetrator was a Grinnell student-athlete and the son of a significant

Grinnell donor.

18.     During Jane's rape, the perpetrator used extreme physical force, violently maneuvered Jane around her dormitory room, knocked over Jane's bookshelf with a violent blow from Jane's head, and repeatedly sexually penetrated her without a condom.

19.     Approximately two weeks later, and shortly before the end of the spring term, in an act of intimidation and dominance, the perpetrator sexually assaulted Jane a second time during an off-campus party by pinching and twisting her nipple and pouring a drink on her.

<u>Grinnell's Failure to Provide Resources</u>

20.     After the rape and sexual assault, Jane's mental health deteriorated precipitously.

21.     When she returned to Grinnell's campus for the fall semester, her mental health had deteriorated to a critical level. Jane felt constantly unsafe on Grinnell's campus and Jane increasingly experienced suicidal ideation.

22.     On January 28, 2020, during a period of significant suicidal ideation, Jane emailed Carolyn Wine at Grinnell Student Health and requested a mental health referral for a sexual trauma therapist.

23.     After receiving this request from Jane on January 28, 2020, Ms. Wine failed to identify the seriousness of Jane's mental health issue, failed to inform Jane about the availability of emergency mental health resources, failed to inform Jane about resources available on Grinnell's campus for victims of sexual assault, failed to inform Jane about the process for reporting sexual assault on campus, and failed to inform Jane about the availability of the Title IX process on Grinnell's campus.

24.     Upon information and belief, Ms. Wine also failed to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane on January 28, 2020.

25.     Instead, Ms. Wine referred Jane to Grinnell College Nurse, Sarah Newell.

26.     After Jane contacted Nurse Newell on January 28, 2020, Nurse Newell failed to identify the seriousness of Jane's mental health issue, failed to inform Jane about the availability of emergency mental health resources, failed to inform Jane about resources available on Grinnell's campus for victims of sexual assault, failed to inform Jane about the process for reporting sexual assault on campus, and failed to inform Jane about the availability of the Title IX process on Grinnell's campus

27.     Instead, Nurse Newell scheduled Jane for an appointment a full two weeks later on February 11, 2020.

28.     Jane increasingly engaged in suicidal ideation between January 28 and February 11, self-isolated in her dormitory room, avoided public spaces on campus, and grew increasingly scared about her safety on campus and the possibility of encountering the perpetrator.

29.     During this period, Jane's family members traveled to Grinnell to temporarily remove her from campus.

30.     On February 11, during her appointment with Nurse Newell, Jane informed Nurse Newell that she needed an immediate referral to a mental health expert and that she was suffering from significant mental health issues as a result of her violent rape and sexual assault.

31.     After receiving this information from Jane on February 11, Nurse Newell failed to identify the seriousness of Jane's mental health issue, failed to inform Jane about the availability of emergency mental health resources, failed to inform Jane about resources available on Grinnell's campus for victims of sexual assault, failed to inform Jane about the process for reporting sexual assault on campus, and failed to inform Jane about the availability of the Title IX process on Grinnell's campus.

32.     Instead, Nurse Newell informed Jane that she could add Jane to a waiting list to see a Grinnell mental health provider and that it may take "a while" to get an appointment set up.

33.     Jane informed Nurse Newell that she needed immediate help for sexual trauma and that she needed to speak with a woman because of the subject matter.

34.     Even after Jane informed Nurse Newell that her mental health needs were immediate and significant, Nurse Newell failed to provide emergency resources to Jane.

35.     Upon information and belief, Nurse Newell also failed to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane on February 11.

36.     Nurse Newell was the *second* Grinnell College administrator or agent who failed to take proper action after receiving information from Jane about her violent rape and sexual assault on Grinnell's campus.

37.     Nurse Newell instead referred Jane to Erik Kohl, who is a Licensed Mental Health Counselor in the town of Grinnell.[1]

38.     From February 11 to February 17, Jane increasingly engaged in suicidal ideation, self-isolated in her dormitory room, avoided public spaces on campus, and grew increasingly scared about her safety on campus and the possibility of encountering the perpetrator.

39.     On February 17, Jane met with Erik Kohl.

40.     After the scheduled 90-minute intake process was complete, Mr. Kohl immediately recognized the seriousness of Jane's mental health issues, informed Jane that he

---

[1] Because of the nature of her mental health challenges, Jane requested that Nurse Newell refer her to a female counselor, but Nurse Newell informed Jane that none were available. In addition to being male, Mr. Kohl also had a personal conflict in treating Jane. After completing his intake of Jane, Mr. Kohl informed Jane that he was simultaneously treating a male Grinnell student with whom Jane had a close, personal relationship. When Jane raised a concern about what she believed to be a conflict, Mr. Kohl informed Jane that he was the only therapist in the area that was qualified to treat PTSD as severe as Jane's.

could not allow her to leave the appointment because of his concerns and extended the intake to three hours. Thereafter, he conducted a PTSD screening.

41.     During the February 17 appointment, Mr. Kohl did not provide Jane with information about the availability of emergency mental health resources, about resources available on Grinnell's campus for victims of sexual assault, about how to report sexual assault on campus, or about the availability of the Title IX process.

42.     Upon information and belief, Mr. Kohl also failed to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane on February 17.

43.     Mr. Kohl was the *third* Grinnell College administrator or agent who failed to take proper action after receiving information from Jane about her violent rape and sexual assault on Grinnell's campus.

44.     After the February 17 appointment with Mr. Kohl, Jane's mental health continued to deteriorate and Jane scheduled a second emergency appointment with Mr. Kohl on February 21.

45.     Mr. Kohl diagnosed Jane with PTSD from sexual trauma.

46.     Jane continued to meet with Mr. Kohl approximately twice per week from February 17 until Grinnell's campus was closed due to the onset of the novel coronavirus on March 13.

<u>The Instagram Account @MeTooGrinnell Comes to Light</u>

47.    In the months that followed, in the wake of the "MeToo" movement, an anonymous Instagram account was established with the handle @MeTooGrinnell. The account provided posts from individuals who alleged that they were victims of sexual assault on Grinnell's campus.

48.    As of August of 2020, the account contained approximately 120 posts from students who alleged that they had been the victim of sexual assault and rape on Grinnell's campus.

49.    The sheer volume of posts and allegations made clear that Grinnell was experiencing a crisis involving sexual assault and rape on campus.

50.    Upon review of the account, Jane's family discovered multiple posts that alleged that the perpetrator had engaged in an ongoing pattern of rape and sexual assault on Grinnell's campus.

51.    On August 5, 2020, after reviewing the contents of the @MeTooGrinnell account, and gaining an understanding of what appeared to be Grinnell's pervasive and ongoing failure to act in response to allegations of rape and sexual assault on Grinnell's campus (including multiple allegations against the perpetrator), Jane's father reached out to Grinnell's President, Anne Harris, to alert her directly about the allegations and his concerns. *Exhibit 1.*

52.    President Harris responded to Jane's father and notified Jane's family, for the first time, of the availability of Title IX protections at Grinnell.

53.    On August 7, 2020, President Harris informed Jane's father that she would connect with Bailey Asberry, Grinnell College's Title IX Coordinator, and request that Ms. Asberry reach out to Jane to assist her.

- 8 -

54.     Upon information and belief, President Harris failed to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane's father on August 5, 2020, and after receiving information that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of sexual assault on Grinnell's campus.

55.     President Harris was the *fourth* Grinnell College administrator or agent who failed to take proper action after receiving information from Jane and her family about her violent rape and sexual assault on Grinnell's campus.

56.     Instead, on August 7, 2020, President Harris indicated that Ms. Asberry would contact Jane.

<u>Ms. Asberry Fails to Act</u>

57.     On August 9, 2020, Jane requested a meeting with Ms. Asberry.

58.     After Jane contacted Ms. Asberry, Ms. Asberry failed to identify the seriousness of Jane's mental health issue, failed to inform Jane about the availability of emergency mental health resources, failed to inform Jane about resources available on Grinnell's campus for victims of sexual assault, failed to inform Jane about the process for reporting sexual assault on campus, and failed to provide any meaningful information to Jane about the availability of the Title IX process on Grinnell's campus.

59.     Instead, Ms. Asberry scheduled a meeting with Jane on August 11, which Ms. Asberry later rescheduled to August 13, and then later rescheduled for the third time.

60.     On August 17, Jane again inquired about the status of the meeting with Ms. Asberry; to which Ms. Asberry responded that she had forgotten to send the meeting invitation.

61.     On August 18, 2020, nearly 16 months after the incident, and only after notifying at least four Grinnell administrators and agents about her violent rape and sexual assault, Jane was able to meet with Ms. Asberry for the first time.

62.     During the August 18 meeting, Jane provided Ms. Asberry with a complete disclosure of the events of the incident, the content of the @MeTooGrinnell Instagram account, her fears about being on campus, her fears of experiencing retaliation if she made a formal complaint, and the mental health challenges that Jane was experiencing as a result of her violent rape and sexual assault.

63.     In response to this information, Ms. Asberry failed to identify the seriousness of Jane's mental health issue, failed to inform Jane about the availability of emergency mental health resources, failed to inform Jane about resources available on Grinnell's campus for victims of sexual assault, failed to inform Jane about the process for reporting sexual assault on campus, and failed to provide any meaningful information to Jane about the availability of the Title IX process on Grinnell's campus.

64.     Upon information and belief, Ms. Asberry also failed to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane on August 18, and after receiving information that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of sexual assault on Grinnell's campus.

65.     Instead, Ms. Asberry repeatedly *discouraged* Jane from formally reporting the perpetrator or the incident, before ultimately concluding the meeting by stating that she would connect Jane with Deanna Shorb, the Dean of Religious Life, for additional support.[2] Ms.

---

[2] In addition to being the Dean of Religious Life, Ms. Shorb's responsibilities fall under her role in the Religious and Spiritual Life leadership in the CRSSJ (Center for Religion, Spirituality, and Social Justice). She is also involved in

Asberry failed to provide Jane with any explanation as to why Grinnell's Title IX office was referring Jane to a theologian.

66.     Ms. Asberry was the *fifth* Grinnell College administrator or agent who failed to take proper action after receiving information from Jane about her violent rape and sexual assault on Grinnell's campus.

67.     After the August 18, 2020 meeting with Asberry, Jane followed up repeatedly with Ms. Asberry to request that she complete the referral to Dean Shorb, but Ms. Asberry failed to take action.

68.     Nearly a month later, on September 15, 2020, Ms. Asberry finally connected Jane with Dean Shorb.

69.     Jane met with Dean Shorb on September 21, 2020.

70.     During the meeting, Jane provided Dean Shorb with a complete disclosure of the events of the incident, the content of the @MeTooGrinnell Instagram account, her fears about being on campus, her fears of experiencing retaliation if she made a formal complaint, and her ongoing mental health challenges.

71.     In response to this information, Dean Shorb failed to identify the seriousness of Jane's mental health issue, failed to inform Jane about the availability of emergency mental health resources, failed to inform Jane about resources available on Grinnell's campus for victims of sexual assault, failed to inform Jane about the process for reporting sexual assault on campus, and failed to provide any meaningful information to Jane about the availability of the Title IX process on Grinnell's campus.

---

Christian leadership, lifecycle events (such as weddings, baptisms, funerals/memorial services), and supervision of the religious life staff.

72.     Upon information and belief, Dean Shorb also failed to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane on August 18, 2020, and after receiving information that there were numerous other allegations by other Grinnell College students about the perpetrator.

73.     Instead, Dean Shorb simply told Jane that she should return to Ms. Asberry and push further for an investigation into the perpetrator and the incident.

74.     Dean Shorb was the *sixth* Grinnell College administrator or agent who failed to take proper action after receiving information from Jane about her violent rape and sexual assault on Grinnell's campus.

75.     From August 18 to September 28, 2020, Ms. Asberry continued to discourage Jane from taking any formal action against the perpetrator or filing a formal complaint, incorrectly informed Jane that she could not make an anonymous complaint, and repeatedly told Jane that the only way Grinnell could take action against the perpetrator was by Jane filing a formal complaint as a petitioner.

76.     In response to Ms. Asberry's statements, Jane repeatedly stated that she was concerned that if she made a formal complaint, her safety on campus would be compromised and that she would experience retaliation and retribution. Jane also continued to share with Ms. Asberry details about her ongoing mental health issues and her PTSD diagnosis which resulted from her sexual assault and rape.

77.     Despite having this information, Ms. Asberry did nothing to reassure Jane about her concerns and failed to provide any assurances to Jane about security precautions that could be taken on campus or about Title IX's protections against retaliation.

78.     Instead, Ms. Asberry made the highly inappropriate and unfathomable suggestion that Jane sit down with the perpetrator "face-to-face" to "mediate" her violent rape and sexual assault with the perpetrator – a request that Jane obviously explicitly refused.

79.     Then, in September and October of 2020, Jane made *three* separate demands to Ms. Asberry that her claims be investigated.

80.     After Jane made her third demand that Grinnell pursue a formal investigation, Ms. Asberry informed Jane that the incidents in which Jane was violently raped and sexually assaulted were "not severe enough" and would not be investigated by Grinnell.

81.     Ms. Asberry then again suggested that Jane sit down with the perpetrator "face-to-face" to "mediate" her violent rape and sexual assault with the perpetrator – a request which Jane was forced to refuse for a *second* time.

82.     Without having received any assurances from Grinnell that the College could ensure Jane's safety on campus, ensure that the perpetrator would be investigated, or ensure that measures could be put in place to support Jane's mental health, Jane made arrangements to discontinue her education on Grinnell's campus.

<u>Jane's Return to Campus and the Formal Complaint</u>

83.     In the spring of 2021, Jane began to consider returning to Grinnell's campus.

84.     As part of her investigation into the possibility of returning to campus, she reached out to Ms. Asberry on April 26, 2021 to inform Ms. Asberry that she was scared of physical violence from the perpetrator and other types of retaliation if she returned to campus, and inquired whether accommodations could be made by Grinnell to ensure Jane's safety and security.

85.     Ms. Asberry did not respond.

86.     At this point, Jane sought and obtained outside legal counsel to assist her in learning about the Title IX process, and its process, protections, and remedies.

87.     On May 11, 2021, Jane again followed-up with Ms. Asberry and the parties set a meeting for May 17, 2021.

88.     On May 14, 2021, Jane followed-up with Ms. Asberry and informed Ms. Asberry that she intended to file a formal complaint against the perpetrator under Grinnell's Title IX policy, that she wished to discuss the process for filing a formal complaint during their May 17 meeting, and that she would like to reserve two hours for the conference.

89.     Despite Jane having informed Ms. Asberry that the purpose of the May 17 meeting was to discuss her violent rape and sexual assault, Ms. Asberry joined the meeting with her young child in her lap – an action that was *highly* inappropriate and a circumstance that Ms. Asberry *knew* would make it impossible for Jane to meaningfully discuss circumstances of violent rape and sexual assault. Ms. Asberry refused to reschedule the meeting to a time when she could provide Jane with the attention the meeting required.

90.     During this meeting, Ms. Asberry repeatedly deflected Jane's demands that a formal complaint be filed, and suggested for the *third* time that Jane sit down with the perpetrator "face-to-face" to "mediate" her violent rape and sexual assault with the perpetrator – a request which Jane forcefully refused for the third time.

91.     During this meeting, Ms. Asberry also denied knowing about the existence of the @MeTooGrinnell account, despite having previously discussed the account with Jane directly, and despite having been informed about the contents of the account in communications between Ms. Asberry and President Harris and Dean Shorb, including (without limitation) Jane's father's email to President Harris of August 5, 2020.

- 14 -

92.     Before the conclusion of the May 17 meeting, Ms. Asberry processed Jane's formal complaint.

<u>The Filing of the Title IX Complaint and the Botched Investigation</u>

93.     On May 24, 2021, more than two years after the incident, Ben Newhouse, Dean of Students, sent notices of investigation to Jane and the perpetrator.

94.     Demetrius Peterson, an attorney at Husch Blackwell, was appointed as Grinnell's investigator.

95.     Grinnell's Title IX Policy ("Grinnell's Policy") provides that Title IX proceedings should be completed within 45-90 days.

96.     However, Mr. Peterson did not even interview the perpetrator until 58 days after the formal complaint was filed on July 14, 2021. Mr. Peterson interviewed the perpetrator a second time on August 6, 2021 (81 days after Jane filed the formal complaint), and then a third time on August 25, 2021 (100 days after Jane filed the formal complaint).

97.     In total, Mr. Peterson conducted eleven interviews of six people, which concluded on August 25, 2021, *100 days after* Jane filed her formal complaint with Ms. Asberry.

98.     During the investigation, it quickly became apparent that Mr. Peterson was not properly abiding by Grinnell's Policy in his investigative duties.

99.     On July 13, 2021, Jane, through counsel, sent correspondence to Ms. Asberry raising concerns about the conduct of the investigator – specifically raising concerns about: Mr. Peterson's statement that he would not consider anonymous complaints about the perpetrator, even though Grinnell's Policy explicitly provides that such evidence should be considered (*see Grinnell College Guide for Prohibited Behavior Section XI, Part C*); Mr. Peterson's apparent lack of attention to detail, including his inability to locate witnesses identified by Jane because he

had inaccurately recorded the spelling of their names, despite having been provided the correct spelling by Jane; and, Mr. Peterson's intimidating and alarming investigative style, which had upset some of the witnesses (including Jane) and made them feel defensive. *Exhibit 2.*

100.    Ms. Asberry never acknowledged or responded to Jane's July 13, 2021 letter regarding the conduct of Mr. Peterson.

<u>The Preliminary Report</u>

101.    Mr. Peterson did not provide his preliminary report until September 10, 2021, 116 days after Jane filed her formal complaint, and two years, four months, and 21 days from the date of the incident.

102.    The preliminary report was riddled with factual errors, misstatements of the applicable policy provisions, and obvious instances of gender bias.

103.    The preliminary report authored by Mr. Peterson had so many factual errors, misstatements of applicable policy provisions, and obvious instances of gender bias that Jane's response to the 18-page preliminary report was 15-pages long. For example:

    a.  Mr. Peterson misstated the alleged Policy violations;

    b.  Mr. Peterson misstated the method in which Jane's interview was conducted;

    c.  Mr. Peterson misstated the location where the incident occurred;

    d.  Mr. Peterson repeatedly misquoted the language of the Policy;

    e.  Mr. Peterson omitted the portion of the Policy regarding consent – a central issue in the investigation;

    f.  Mr. Peterson chose his own description of "incapacitation" rather than the actual definition of "incapacitation" which was contained in the Policy;

g.  Mr. Peterson shifted the burden of proof required to show consent and lack of capacity from the perpetrator, who is required under the Policy to prove that the other party affirmatively provided consent; to the victim, who Mr. Peterson reported "did not say no" – even though she was unconscious;

h.  Mr. Peterson omitted sections of the Policy related to the factual findings that support a conclusion that an individual lacks the ability to consent due to intoxication – a central issue in the investigation;

i.  Mr. Peterson repeatedly misstated the factual record provided by the witnesses, including (without limitation) a highly inappropriate and inaccurate portrayal that that the perpetrator and Jane had engaged in a "romantic" relationship – a complete invention of the investigator, which was totally unsupported by any of the interviews with the witnesses; and,

j.  Mr. Peterson repeatedly demonstrated bias by making factual findings that were inconsistent with the Policy.

*See Exhibit 3.*

104.   After the preliminary report was provided to Jane, Jane was also provided with a list of highly inflammatory and offensive additional questions which the perpetrator requested be asked of Jane, including (without limitation): whether Jane was wet when the perpetrator violently raped her; whether Jane was a virgin at the time of her rape; and if Jane was not a virgin at the time of the rape, how she lost her virginity.

105.   Mr. Peterson's final report was provided on October 8, 2021, 144 days after Jane filed her formal complaint and nearly two-and-a-half years after the incident.

### Grinnell Drops Jane's Major and Withdraws her from the College

- 17 -

106.    On October 15, 2021, Jane emailed Ms. Asberry and Dean Newhouse to express concern that the Title IX process was taking so long to be completed, and to share her concern that in light of the manner in which the investigation had been conducted and the information included in the final report, she did not feel safe returning to Grinnell's campus while the action was pending and requested that she be allowed an accommodation that would allow her to complete her coursework remotely or graduate early.

107.    At this point, Jane had completed coursework for two majors, and was one class away from completing her third major, which was in mathematics.[3]

108.    Ms. Asberry assured Jane that an accommodation would be made that would allow her to complete each of her major areas of study, without requiring Jane to return to Grinnell's campus.

109.    On October 26, 2021, Jane spoke to her math advisor, Christopher French, and the chair of the math department, Karen Shuman, and disclosed the existence of her Title IX matter, her concerns about returning to campus, and her desire to complete her math major.

110.    From this point forward, the mathematics department at Grinnell fully divorced Jane from the department, ignored her communications, denied her requests for accommodation, prevented Jane from completing her math major, forced Jane to be dropped from her math major, and ultimately stripped her of academic honors in the department, despite her significant academic achievement in mathematics – each as further detailed below.

111.    On November 1, 2021, having received no information about the timing of the hearing, Jane emailed Dean Newhouse and Ms. Asberry to inquire as to when the hearing would take place.

---

[3] Previously, on April 21, 2021, the Committee on Academic Standing approved Jane to graduate with three majors.

112.    Dean Newhouse responded that the hearing would not occur until at least January.

113.    Accordingly, Jane petitioned the Committee on Academic Standing ("CAS") for an accommodation that would allow her to complete her final math course either remotely through Grinnell or out-of-residence.

114.    Jane's Petition was submitted to CAS on October 28, 2021 and scheduled to be heard by CAS on November 3, 2021.

115.    On November 3, 2021, Jane was informed, without explanation, that CAS did not consider her Petition and that her Petition could next be considered by CAS on November 16, 2021 (although there was apparently no guarantee that Jane's petition would be considered).

116.    Registration deadlines were imminent and Jane was extremely concerned that CAS's failure to consider the Petition could jeopardize her ability to complete her math major.

117.    In light of her concerns, Jane reached out to Ms. Asberry and Dean Newhouse again.

118.    Ms. Asberry again provided assurances that Grinnell College would provide an accommodation that would allow Jane to "graduate with [her] Grinnell degree in a way that supports [her] mental health and being away from campus in the spring of 2022."

119.    On November 18, 2021, CAS approved Jane for early graduation, but left open the issue of how or whether the final math course needed to be completed.

120.    The next day, Jane emailed Professor Shuman and Ms. Asberry to inquire about next steps, but received no response.

121.    On November 29, Jane again followed up with Professor Shuman and Ms. Asberry to inquire about next steps; and again, received no response.

122.    Then, on November 30, Ms. Asberry notified Jane that her math major would be dropped – directly contradicting Ms. Asberry's multiple prior statements that Grinnell College would provide accommodations that would allow Jane to graduate with each of her major areas of study.

123.    On December 1, Jane was informed that her math major had been dropped without Jane's request or consent.

124.    On December 6, 2021, Ms. Asberry informed Jane she would have to submit another petition to the CAS to re-declare the math major.

125.    On December 7, 2021, Jane spoke with Grinnell College's Registrar, Catherine Ashton and Vickie Rutherford, who informed Jane that Grinnell College had dropped Jane's math major without Jane's request or consent, that Grinnell College had withdrawn Jane from the school for the spring semester, and that Jane's student loans may come out of deferment because of Grinnell's actions. Ms. Ashton also informed Jane that outside of the Title IX hearing, Grinnell College has no legal responsibility to provide any accommodations to victims of sexual abuse and sexual assault.

126.    On December 7, Jane emailed Professor Shuman with a question about the math major, but received no response.

127.    On December 7, Jane also petitioned CAS to allow her to complete her final math course either remotely through Grinnell, or out-of-residence.

128.    On December 11, Jane emailed Professor Shuman and inquired about the major, but received no response.

129.    On December 15, Jane followed-up with Professor Shuman, and again received no response.

130.     On December 16, the Registrar, Ms. Ashton, informed Jane that Jane's request to complete the final math course either remotely through Grinnell, or out-of-residence, had been denied.

131.     Jane then inquired whether she could return to campus during the Spring semester to complete the math class, and was informed that during the period that CAS was ignoring, then considering, and then denying Jane's requests, all of the courses that would allow Jane to complete the major had filled and that Jane would not be admitted.

132.     On December 20, Jane appealed CAS's decision to Dean Elaine Marzluff.

133.     At the same time, Jane's father again reached out to President Harris to share his concerns with the manner in which Grinnell's administration had been handling the Title IX process.

134.     After President Harris intervened, Jane was finally approved to take her final math course out-of-residence, her spring withdrawal was retroactively reinstated, and Jane was scheduled to graduate in May.

135.     On December 30, Jane emailed Professors French and Shuman with a selection of courses which she believed would satisfy the requirements for the final math course, but received no response.

<u>The Hearing is Cancelled</u>

136.     The hearing on Jane's Title IX claims was finally scheduled for February 8, 2022.

137.     However, *on the eve of the hearing*, at 10:26 PM, Ms. Asberry emailed the parties to inform them that neither she, nor Dean Newhouse, nor the investigator, Mr. Peterson, had provided the perpetrator with the formal complaint during the *nearly ten months* that the Title IX action had been pending; and that as a result, Grinnell had made the decision to continue the

hearing – *ultimately another two months*, until the final moments before the perpetrator's graduation.

138.    The allegations contained in the complaint were far from a secret. To the contrary, the allegations had been thoroughly discussed throughout the proceedings, including: with the perpetrator in a total of three interviews that occurred in July and August of 2021; in a preliminary report which was published by the investigator in September of 2021; in the perpetrator's response to the preliminary report, which was provided by the perpetrator in October of 2021; and in the final report, which was published by the investigator on October 8, 2021.

139.    The complaint itself was approximately two pages long. It could have been quickly and easily reviewed by the perpetrator at any time between Ms. Asberry's purported discovery of her oversight and the commencement of the hearing. The hearing also could have easily been delayed by a few minutes, or even a few hours, to allow the perpetrator sufficient time to review the allegations.

140.    Instead, the hearing was delayed another two months, to April 8, 2022, in the final moments before the perpetrator's graduation.

141.    On April 4, 2022, *eleven months* into the proceedings and *four days* before the hearing, the perpetrator submitted a polygraph examination as additional evidence in the proceedings.

142.    Jane, through counsel, immediately objected to the document being included in the file; a request which was denied.

143.    On April 8, 2022, a final hearing on Jane's complaint occurred, just short of three

years after the incident occurred, and remarkably spanning Jane's entire attendance at Grinnell

College.

<u>The Hearing Outcome and Sanction</u>

144.    On April 19, 2022, 1095 days after Jane was violently raped and sexually

assaulted on Grinnell's campus, Ms. Asberry provided Jane with a list of on campus and off

campus resources for victims of sexual assault *for the very first time*.

145.    Later that day, the adjudicator found the perpetrator responsible for "Sexual

Assault Non-consensual Sexual Intercourse" and "Sexual Assault Non-consensual Sexual

Contact."

146.    After the adjudicator made his findings, Grinnell had the authority to determine

the appropriate sanction for the perpetrator.

147.    Grinnell's sanctions were wildly inappropriate and ineffective.

148.    Grinnell selected five sanctions against the perpetrator for the violent rape and

sexual assault of Jane:

      a.    First, Grinnell placed the perpetrator on probation "through the remainder of [his]

           career at Grinnell College" – a sanction which was meaningless because it

           included a period of only 23 days, including a week during which there were no

           classes;

      b.    Second, Grinnell imposed a no-contact order, which required that the perpetrator

           avoid close proximity to Jane – a sanction which was meaningless because Jane

           had already been forced, through Grinnell's inaction, to remove herself from

           campus nearly *two-and-a-half years* earlier;

c.  Third, Grinnell imposed a loss of social privileges, which prohibited the perpetrator from participating in a variety of social events – a sanction which was meaningless because most of the social events cited in the sanction had already occurred at the time of the sanction, and to the extent social activities occurred after the sanction, the perpetrator's participation in the events was not monitored or enforced;

d.  Fourth, Grinnell provided that the perpetrator was unable to participate in graduation activities, *but only if Jane chose to attend* – an outrageous sanction which had the impact of further victimizing Jane by forcing her to return to the location of her violent rape and sexual assault to attend graduation, despite having been diagnosed with PTSD, solely to ensure that the perpetrator would suffer any meaningful sanction as the result of his violent sexual misconduct;

e.  Fifth, Grinnell provided that the perpetrator was unable to participate in future alumni events, *but only if Jane chose to attend* – an outrageous sanction which had the impact of further victimizing Jane by forcing her to repeatedly be reminded of her violent rape and sexual assault with respect to any future Grinnell activity, despite having been diagnosed with PTSD, solely to ensure that the perpetrator would suffer any meaningful sanction as the result of his violent sexual misconduct.

149.   The sanctions chosen by Grinnell were woefully inadequate and deeply biased in favor of the perpetrator. Furthermore, and more importantly, the sanctions chosen by Grinnell were bizarrely crafted to require Jane's *actual ongoing involvement for the entire duration of her*

*life*; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery.

150.     On April 26, 2022, the perpetrator appealed the adjudicator's findings.

151.     On May 5, 2022, while the perpetrator's appeal was pending, Grinnell contacted Jane to pressure her into notifying Grinnell regarding whether she planned to attend her graduation prior to their previously established deadline of May 9, 2022; because, according to Grinnell, Jane's rapist needed to know if he should print graduation announcements.

152.     Grinnell's concern about the printing needs of a student who had been found to have violently raped and sexually assaulted one of their students was extreme and outrageous – and explicit example of how Grinnell's ineptitude in crafting the perpetrator's sanctions had the obvious effect of further victimizing Jane.

153.     In one final insult, Grinnell College stripped Jane of honors in two of her three majors despite Jane's outstanding academic record.

<u>Jane's Ongoing Mental Health Concerns</u>

154.     The mental health challenges that Jane has developed as a direct and proximate result of the incident and Grinnell's woefully inadequate, inept, and untimely response to the incident, are ongoing and expected to remain for the duration of her life.

155.     Jane has been diagnosed Post-Traumatic Stress Syndrome ("PTSD"), anxiety, depression, and Obsessive Compulsive Disorder onset by the traumatic event.

156.     Jane is being treated with a daily antidepressant and anti-anxiety medications and is expected to continue to take them for the duration of her life.

**COUNT I**
**20 U.S.C. § 1681,** *et seq.* **– Violation of Title IX**
**Deliberate Indifference to Sexual Abuse**

157.    The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

158.    Grinnell College had actual knowledge of the violent rape and sexual assault sustained by Jane at the hand of the Perpetrator, a student, star athlete, and son of a major donor to Grinnell College.

159.    The violent rape, sexual assault, and Title IX violations were reported to Grinnell College's administration, Grinnell College's agent, and to the Title IX Office which had the direct power and authority to address the misconduct and to institute corrective measures on Grinnell College's behalf.

160.    Grinnell College also had actual knowledge that several other individuals reported that the Perpetrator had engaged in multiple other instances of rape and sexual assault.

161.    Grinnell College exercised substantial control over the Perpetrator in that he was under Grinnell College's disciplinary authority. At all times relevant to this Complaint, the Perpetrator was a student at Grinnell College and a member of its baseball team.

162.    Despite having knowledge of the violent rape and sexual assault of Jane, Grinnell College displayed a deliberate indifference in responding to the knowledge of the Perpetrator's conduct by:

      a.    Failing to identify the seriousness of Jane's mental health issue during multiple encounters with at least six different administrators and agents of Grinnell College;

b.  Failing to inform Jane about the availability of emergency mental health resources during multiple encounters with at least six different administrators and agents of Grinnell College;

c.  Failing to inform Jane about resources available on Grinnell's campus for victims of sexual assault during multiple encounters with at least six different administrators and agents of Grinnell College;

d.  Failing to inform Jane about the process for reporting sexual assault on campus during multiple encounters with at least six different administrators and agents of Grinnell College;

e.  Failing to inform Jane about the availability of the Title IX process on Grinnell's campus during multiple encounters with at least six different administrators and agents of Grinnell College;

f.  Failing to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane during multiple encounters with at least six different administrators and agents of Grinnell College

g.  Failing to report the perpetrator for rape and sexual assault after receiving information from Jane and her father during multiple encounters with at least three different administrators of Grinnell College that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of rape and sexual assault on Grinnell's campus;

h.  Discouraging Jane from formally reporting the perpetrator or the incident during multiple encounters with Ms. Asberry;

i.  Referring Jane to a theologian after she disclosed her violent rape and sexual assault to Grinnell's Title IX department;

j.  Incorrectly informing Jane that she could not make an anonymous complaint, and repeatedly telling Jane that the only way Grinnell could take action against the perpetrator was by Jane filing a formal Title IX complaint as a petitioner;

k.  Failing to provide any assurances to Jane about security precautions that could be taken on campus or about Title IX's protections against retaliation;

l.  Ms. Asberry's repeated suggestion that Jane sit down with the perpetrator "face-to-face" to "mediate" her violent rape and sexual assault with the perpetrator;

m.  Failing to complete the formal Title IX proceedings within 45-90 days;

n.  Publishing a preliminary report that was riddled with factual errors, misstatements of the applicable policy provisions, and obvious instances of gender bias;

o.  Publishing to Jane a list of highly inflammatory and offensive additional questions which the perpetrator requested be asked of Jane, including (without limitation): whether Jane was wet when the perpetrator violently raped her; whether Jane was a virgin at the time of her rape; and if Jane was not a virgin at the time of the rape, how she lost her virginity;

p.  Failing to provide the perpetrator with a copy of Jane's formal complaint on a timely basis;

q.  Extending the final hearing unnecessarily;

r.  Failing to consider admissible evidence about the Perpetrator;

s.  Considering inadmissible evidence offered by the Perpetrator;

t.   Selecting sanctions against the perpetrator that were woefully inadequate and deeply biased in favor of the perpetrator;

u.   Selecting sanctions against the perpetrator that require Jane's actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery;

v.   Failing to create a safe and protected educational environment for Jane during the investigation and proceedings;

w.   Failing to provide Jane with reasonable accommodations for the completion of her major areas of study;

x.   Failing to communicate with Jane in a reasonable manner, including Grinnell's ongoing disregard for Jane's communications; and,

y.   In other ways.

163.    Grinnell College's indifference was clearly unreasonable.

164.    Grinnell College's misconduct made Jane vulnerable to additional harm, including retaliation, significant mental health issues, and the loss of the benefits of her post-secondary educational experience.

165.    Grinnell College's misconduct was so severe, pervasive, and objectively offensive that it deprived Jane of her access to educational opportunities or benefits provided by Grinnell College such that their conditions of education changed and created an abusive educational environment.

166.    Further, Grinnell College's misconduct was so severe, pervasive, and objectively offensive that it deprived Jane of the ongoing benefits of a Grinnell education, including (without

limitation) destroying the relationships that would have existed between Jane and the College, as well as her mentors, professors, departments, alumni organizations, and the like.

167.    Grinnell College's misconduct also denied the Jane equal access to the protections and process provided by, and required by, Title IX.

168.    In fact, Jane discontinued her pursuit of opportunities on Grinnell College's campus because of the trauma inflicted by the Perpetrator and Grinnell College's subsequent treatment of her.

169.    Grinnell College receives federal financial assistance and therefore is required to follow the mandates of Title IX.

170.    Grinnell College engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted from seeking adequate prosecution and protection.

171.    Jane has suffered emotional distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Grinnell College's deliberate indifference of her rights under Title IX.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.    Compensatory damages in an amount to be determined at trial;

B.    Punitive damages;

C.    Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based

harassment and/or sexual assault; (d) treat all victims as complainants and provide such

victims with "complainant" rights under Title IX and Grinnell College's Policy,

regardless of whether the victims want to remain anonymous or pursue a formal

investigation; and (e) mitigate the effects of harassment and/or assault including by

eliminating any hostile environment that may arise from or contribute to it;

D.       Plaintiff's attorneys' fees and costs; and

E.       For such other relief as the Court deems proper.

## COUNT II
### 20 U.S.C. § 1681, *et seq*. – Violation of Title IX
### Creation of a Hostile Educational Environment

172.     The above-numbered paragraphs are incorporated by reference as if fully-stated

herein.

173.     Grinnell College had actual knowledge of the rape and sexual assault sustained by

Jane at the hand of the Perpetrator, a student, star athlete, and major donor to Grinnell College.

174.     The violent rape, sexual assault, and Title IX violations were reported to Grinnell

College's administration, Grinnell College's agent, and to the Title IX Office which had the

direct power and authority to address the misconduct and to institute corrective measures on

Grinnell College's behalf.

175.     Grinnell College also had actual knowledge that several other individuals reported

that the Perpetrator had engaged in multiple other instances of rape and sexual assault.

176.     Grinnell College exercised substantial control over the Perpetrator in that he was

under Grinnell College's disciplinary authority. At all times relevant to this Complaint, the

Perpetrator was a student at Grinnell College and a member of its baseball team.

177.    Grinnell College created and/or subjected Jane to a hostile educational environment in violation of Title IX by:

a. Failing to follow its own Policies and procedures in place under Title IX;

b. Failing to adequately and properly investigate allegations of rape and sexual assault perpetrated by Grinnell students, including Jane;

c. Failing to properly and promptly respond to the complaints of Title IX sex-based discrimination against Grinnell students, including Jane;

d. Failing to protect Grinnell students, including Jane, from sex-based discrimination;

e. Depriving Grinnell students, including Jane, with complainant and victim rights;

f. Failing to apply its Policy consistently to Jane, as a victim of rape and sexual assault, among other things;

g. Failing to identify the seriousness of Jane's mental health issues during multiple encounters with at least six different administrators and agents of Grinnell College;

h. Failing to inform Jane about the availability of emergency mental health resources during multiple encounters with at least six different administrators and agents of Grinnell College;

i. Failing to inform Jane about resources available on Grinnell's campus for victims of sexual assault during multiple encounters with at least six different administrators and agents of Grinnell College;

j.  Failing to inform Jane about the process for reporting sexual assault on campus during multiple encounters with at least six different administrators and agents of Grinnell College;

k.  Failing to inform Jane about the availability of the Title IX process on Grinnell's campus during multiple encounters with at least six different administrators and agents of Grinnell College;

l.  Failing to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane during multiple encounters with at least six different administrators and agents of Grinnell College

m.  Failing to report the perpetrator for rape and sexual assault after receiving information from Jane and her father during multiple encounters with at least three different administrators of Grinnell College that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of rape and sexual assault on Grinnell's campus;

n.  Discouraging Jane from formally reporting the perpetrator or the incident during multiple encounters with Ms. Asberry;

o.  Referring Jane to a theologian after she disclosed her violent rape and sexual assault to Grinnell's Title IX department;

p.  Incorrectly informing Jane that she could not make an anonymous complaint, and repeatedly telling Jane that the only way Grinnell could take action against the perpetrator was by Jane filing a formal Title IX complaint as a petitioner;

q.  Failing to provide any assurances to Jane about security precautions that could be taken on campus or about Title IX's protections against retaliation;

r.  Ms. Asberry's repeated suggestion that Jane sit down with the perpetrator "face-to-face" to "mediate" her violent rape and sexual assault with the perpetrator;

s.  Failing to complete the formal Title IX proceedings within 45-90 days;

t.  Publishing a preliminary report that was riddled with factual errors, misstatements of the applicable policy provisions, and obvious instances of gender bias;

u.  Publishing to Jane a list of highly inflammatory and offensive additional questions which the perpetrator requested be asked of Jane, including (without limitation): whether Jane was wet when the perpetrator violently raped her; whether Jane was a virgin at the time of her rape; and if Jane was not a virgin at the time of the rape, how she lost her virginity;

v.  Failing to provide the perpetrator with a copy of Jane's formal complaint on a timely basis;

w.  Extending the final hearing unnecessarily;

x.  Failing to consider admissible evidence about the Perpetrator;

y.  Considering inadmissible evidence offered by the Perpetrator;

z.  Selecting sanctions against the perpetrator that were woefully inadequate and deeply biased in favor of the perpetrator;

aa. Selecting sanctions against the perpetrator that require Jane's actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery;

bb. Failing to create a safe and protected educational environment for Jane during the investigation and proceedings;

cc. Failing to provide Jane with reasonable accommodations for the completion of her major areas of study;

dd. Failing to communicate with Jane in a reasonable manner, including Grinnell's ongoing disregard for Jane's communications; and,

ee. In other ways.

178. Grinnell College's misconduct was clearly unreasonable.

179. Grinnell College's misconduct made Jane vulnerable to additional harm, including retaliation, significant mental health issues, and the loss of the benefits of her post-secondary educational experience.

180. Grinnell College's misconduct was so severe, pervasive, and objectively offensive that it deprived Jane of her access to educational opportunities or benefits provided by Grinnell College such that her conditions of education changed and created an abusive educational environment.

181. Further, Grinnell College's misconduct was so severe, pervasive, and objectively offensive that it deprived Jane of the ongoing benefits of a Grinnell education, including (without limitation) destroying the relationships that would have existed between Jane and the College, as well as her mentors, professors, departments, alumni organizations, and the like.

182. Grinnell College's misconduct also denied the Jane equal access to the protections and process provided by, and required by, Title IX.

183. In fact, Jane discontinued her pursuit of opportunities on Grinnell College's campus because of the trauma inflicted by the Perpetrator and Grinnell College's subsequent treatment of her.

184.     Grinnell College receives federal financial assistance and therefore is required to follow the mandates of Title IX.

185.     Grinnell College engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted from seeking adequate prosecution and protection.

186.     Jane has suffered emotional distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Grinnell College's violation of Jane's rights under Title IX.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.     Compensatory damages in an amount to be determined at trial;

B.     Punitive damages;

C.     Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; (d) treat all victims as complainants and provide such victims with "complainant" rights under Title IX and Grinnell College's Policy, regardless of whether the victims want to remain anonymous or pursue a formal investigation; and (e) mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.     Plaintiff's attorneys' fees and costs; and

E.     For such other relief as the Court deems proper.

<u>**COUNT III**</u>
**20 U.S.C. § 1681, *et seq.* – Violation of Title IX**
**Failure to Prevent Retaliation**

187.     The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

188.     Title IX's regulations incorporate by reference the retaliation provision of Title VI of the Civil Rights Act of 1964.

189.     Title IX makes it unlawful to retaliate against individuals who file a complaint alleging a violation of Title IX.

190.     Jane was entitled to assurance under Title IX that her pursuit of a remedy under Title IX would be fully supported by Grinnell College, but she was denied this right.

191.     Jane had the right to pursue a remedy under Title IX without fear of retaliation, but she was denied this right.

192.     Jane had the right to participate freely and honestly in the investigation interviews without fear of reprisal, intimidation, or coercion, but she was denied this right.

193.     Jane had the right to participate in courses and other campus activities while the investigation was pending without fear of reprisal, intimidation, or coercion, but she was denied this right.

194.     Jane was protected from retaliation pursuant to Title IX regulations that "incorporate the requirement in the Title VI regulations, which provides that '[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI], or because he [or she] has made a complaint, testified, assisted, or participated in any manner in an investigation,

proceeding or hearing under this subpart.'" 34 C.F.R. § 106.71 (incorporating the retaliation language of the regulations under Title VI); 34 C.F.R. § 100.7(e).

195.     Grinnell College retaliated against Jane in violation of Title IX, after she reported her violent rape and sexual assault, by:

    a.  Failing to create a safe and protected educational environment for Jane during the investigation and proceedings;

    b.  Failing to communicate with Jane in a reasonable manner, including Grinnell's ongoing disregard for Jane's communications;

    c.  Ignoring Jane's communications with the mathematics department;

    d.  Failing to provide Jane with reasonable accommodations for the completion of her major areas of study;

    e.  Dropping Jane's mathematics major without her request or consent;

    f.  Withdrawing Jane from Grinnell College without her request or consent;

    g.  Stripping Jane of academic honors in two of her major areas of study;

    h.  Selecting sanctions against the perpetrator that were woefully inadequate and deeply biased in favor of the perpetrator;

    i.  Selecting sanctions against the perpetrator that require Jane's actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery; and,

    j.  In other ways.

196.     Grinnell College's misconduct was clearly unreasonable.

197.    Grinnell College's misconduct made Jane vulnerable to additional harm, including retaliation, significant mental health issues, and the loss of the benefits of her post-secondary educational experience.

198.    Grinnell College's misconduct was so severe, pervasive, and objectively offensive that it deprived Jane of her access to educational opportunities or benefits provided by Grinnell College such that her conditions of education changed and created an abusive educational environment.

199.    Grinnell College's misconduct also denied the Jane equal access to the protections and process provided by, and required by, Title IX.

200.    In fact, Jane discontinued her pursuit of opportunities on Grinnell College's campus because of the trauma inflicted by the Perpetrator and Grinnell College's subsequent treatment of her.

201.    Grinnell College receives federal financial assistance and therefore is required to follow the mandates of Title IX.

202.    Grinnell College engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted from seeking adequate prosecution and protection.

203.    Jane has suffered emotional distress and psychological damage, and her character and standing in the community has suffered as a direct and proximate result of Grinnell College's deliberate indifference of her rights under Title IX.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.    Compensatory damages in an amount to be determined at trial;

B.      Punitive damages;

C.      Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; (d) treat all victims as complainants and provide such victims with "complainant" rights under Title IX and Grinnell College's Policy, regardless of whether the victims want to remain anonymous or pursue a formal investigation; and (e) mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.      Plaintiff's attorneys' fees and costs; and

E.      For such other relief as the Court deems proper.

## COUNT IV
### 20 U.S.C. § 1681, *et seq*. – Violation of Title IX
### Retaliation by Withholding Protections Otherwise Conferred by Title IX

204.    The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

205.    Title IX's regulations incorporate by reference the retaliation provision of Title VI of the Civil Rights Act of 1964.

206.    Title IX makes it unlawful to retaliate against individuals who file a complaint alleging a violation of Title IX.

207.    Jane was entitled to assurance under Title IX that her pursuit of a remedy under Title IX would be fully supported by Grinnell College, but she was denied this right.

208.    Jane had the right to pursue a remedy under Title IX without fear of retaliation, but she was denied this right.

209.    Jane had the right to participate freely and honestly in the investigation interviews without fear of reprisal, intimidation, or coercion, but she was denied this right.

210.    Jane had the right to participate in courses and other campus activities while the investigation was pending without fear of reprisal, intimidation, or coercion, but she was denied this right.

211.    Jane was protected from retaliation pursuant to Title IX regulations that "incorporate the requirement in the Title VI regulations, which provides that '[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI], or because he [or she] has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subpart.'" 34 C.F.R. § 106.71 (incorporating the retaliation language of the regulations under Title VI); 34 C.F.R. § 100.7(e).

212.    Grinnell College retaliated against Jane in violation of Title IX, after she reported her violent rape and sexual assault, by:

      a.    Failing to follow its own Policies and procedures in place under Title IX;

      b.    Failing to adequately and properly investigate allegations of rape and sexual assault perpetuated upon Jane;

      c.    Failing to adequately and properly follow proper procedures in holding the hearing;

      d.    Depriving Jane with complainant and victim rights;

e.  Failing to properly and promptly respond to the complaints of Title IX sex-based discrimination;

f.  Failing to protect Jane from sex-based discrimination;

g.  Failing to apply its Policy consistently to Jane, as a victim of rape and sexual assault, among other things;

h.  Failing to inform Jane about the process for reporting sexual assault on campus during multiple encounters with at least six different administrators and agents of Grinnell College;

i.  Failing to inform Jane about the availability of the Title IX process on Grinnell's campus during multiple encounters with at least six different administrators and agents of Grinnell College;

j.  Failing to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane during multiple encounters with at least six different administrators and agents of Grinnell College

k.  Failing to report the perpetrator for rape and sexual assault after receiving information from Jane and her father during multiple encounters with at least three different administrators of Grinnell College that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of rape and sexual assault on Grinnell's campus;

l.  Incorrectly informing Jane that she could not make an anonymous complaint, and repeatedly telling Jane that the only way Grinnell could take action against the perpetrator was by Jane filing a formal Title IX complaint as a petitioner;

m.  Failing to provide any assurances to Jane about security precautions that could be taken on campus or about Title IX's protections against retaliation;

n.  Failing to complete the formal Title IX proceedings within 45-90 days;

o.  Publishing a preliminary report that was riddled with factual errors, misstatements of the applicable policy provisions, and obvious instances of gender bias;

p.  Publishing to Jane a list of highly inflammatory and offensive additional questions which the perpetrator requested be asked of Jane, including (without limitation): whether Jane was wet when the perpetrator violently raped her; whether Jane was a virgin at the time of her rape; and if Jane was not a virgin at the time of the rape, how she lost her virginity;

q.  Failing to provide the perpetrator with a copy of the formal complaint on a timely basis;

r.  Extending the final hearing unnecessarily;

s.  Failing to consider admissible evidence about the Perpetrator;

t.  Considering inadmissible evidence offered by the Perpetrator;

u.  Selecting sanctions against the perpetrator that were woefully inadequate and deeply biased in favor of the perpetrator;

v.  Selecting sanctions against the perpetrator that require Jane's actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery;

w.  Failing to create a safe and protected educational environment for Jane during the investigation and proceedings;

- 43 -

x.   Failing to provide Jane with reasonable accommodations for the completion of her major areas of study;

y.   Failing to communicate with Jane in a reasonable manner, including Grinnell's ongoing disregard for Jane's communications; and,

z.   In other ways.

213.   Grinnell College's misconduct was clearly unreasonable.

214.   Grinnell College's misconduct made Jane vulnerable to additional harm, including retaliation, significant mental health issues, and the loss of the benefits of her post-secondary educational experience.

215.   Grinnell College's misconduct was so severe, pervasive, and objectively offensive that it deprived Jane of her access to educational opportunities or benefits provided by Grinnell College such that her conditions of education changed and created an abusive educational environment.

216.   Grinnell College's misconduct also denied the Jane equal access to the protections and process provided by, and required by, Title IX.

217.   In fact, Jane discontinued her pursuit of opportunities on Grinnell College's campus because of the trauma inflicted by the Perpetrator and Grinnell College's subsequent treatment of her.

218.   Grinnell College receives federal financial assistance and therefore is required to follow the mandates of Title IX.

219.   Grinnell College engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted from seeking adequate prosecution and protection.

220.     Jane has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Grinnell College's deliberate indifference of her rights under Title IX.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.      Compensatory damages in an amount to be determined at trial;

B.      Punitive damages;

C.      Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; (d) treat all victims as complainants and provide such victims with "complainant" rights under Title IX and Grinnell College's Policy, regardless of whether the victims want to remain anonymous or pursue a formal investigation; and (e) mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.      Plaintiff's attorneys' fees and costs; and

E.      For such other relief as the Court deems proper.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.      Compensatory damages in an amount to be determined at trial;

B.      Punitive damages;

C.      Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; (d) treat all victims as complainants and provide such victims with "complainant" rights under Title IX and Grinnell College's Policy, regardless of whether the victims want to remain anonymous or pursue a formal investigation; and (e) mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.      Plaintiff's attorneys' fees and costs; and

E.      For such other relief as the Court deems proper.

## COUNT V
### 20 U.S.C. § 1681, *et seq.* – Violation of Title IX
### Erroneous Result Based on Gender Bias

221.    The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

222.    Grinnell College receives federal financial assistance and therefore is required to follow the mandates of Title IX.

223.    Grinnell College displayed gender discrimination throughout its investigation and evaluation of Jane' allegations.

224.    Grinnell College came to an erroneous result based on gender bias.

225.    Jane can identify specific facts, including but not limited to those set forth in this Count and above, that demonstrate a pattern of decision-making that tends to show discrimination and the influence of gender.

226.    Indeed, Grinnell College's investigations into Jane's allegations were conducted in an inconsistent and discriminatory manner.

227.    Grinnell College did not take Jane's statements on a timely basis or in a proper manner, did not interview her witnesses on a timely basis or in a proper manner, did not collect evidence on a timely basis or in a proper manner, and failed to communicate with her over the course of the Title IX process.

228.    Grinnell College did not appoint an impartial investigator, and the preliminary and final investigative reports produced by the investigator were the result of gender bias.

229.    Grinnell College's actions resulted in biased, predisposed hearings in the Perpetrator' favor.

230.    Because Grinnell College botched the investigation, no evidence of the Perpetrator' pattern of similar misconduct or any other corroborating evidence was ever introduced.

231.    As a result, and despite the existence of clear evidence of a pattern of misconduct, Grinnell College imposed sanctions against the Perpetrator which were wholly inappropriate for the misconduct that was found by the adjudicator.

232.    Grinnell College also failed to investigate the claims of multiple other women against the Perpetrator.

233.    Jane's gender, and Grinnell College's desire to protect one of its star male athletes and donors, was the motivating role in the disparate treatment described above.

234.    The erroneous result based on gender discrimination caused Jane to suffer significantly from the entire discriminatory process and from knowing that Grinnell College betrayed her because she is a woman.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.      Compensatory damages in an amount to be determined at trial;

B.      Punitive damages;

C.      Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; (d) treat all victims as complainants and provide such victims with "complainant" rights under Title IX and Grinnell College's Policy, regardless of whether the victims want to remain anonymous or pursue a formal investigation; and (e) mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.      Plaintiff's attorneys' fees and costs; and

E.      For such other relief as the Court deems proper.

## COUNT VI
### 20 U.S.C. § 1681, *et seq.* – Violation of Title IX
### Discrimination on the Basis of Gender

235.    The above-numbered are incorporated by reference as if fully-stated herein.

236.    Jane is female.

237.    Grinnell College's acts and omissions toward Jane amounted to unlawful sexual harassment and discrimination on the basis of gender.

238.    The discrimination was sufficiently severe and pervasive to create an abusive, and hostile educational environment for Jane.

239.    The Perpetrator, a star male athlete on campus and a significant donor, had a
reputation and history for harassing and abusing women. At least four different women have
made allegations against him.

240.    One or more of Grinnell College's administrators or officials, with authority to
take corrective action on Jane' behalf, had actual notice of the Perpetrators misconduct and failed
to adequately respond.

241.    Grinnell College failed to enact and/or disseminate and/or implement proper or
adequate procedures to discover, prohibit or remedy the kind of misconduct that Jane suffered.
This failure included, without limitation, nonexistent or inadequate customs, policies or
procedures for the recognition, reporting, investigation and correction of sexual misconduct, and
the failure to properly train or monitor Title IX staff such as Ms. Asberry.

242.    Moreover, the Perpetrator, was given significantly favorable treatment compared
to Jane throughout the Title IX process and its lead-up.

243.    Because Grinnell College botched the investigation, no evidence of the
Perpetrator' pattern of similar misconduct or any other corroborating evidence was ever
introduced.

244.    As a result, and despite the existence of clear evidence of a pattern of misconduct,
Grinnell College imposed sanctions against the Perpetrator which were wholly inappropriate for
the misconduct that was found by the adjudicator.

245.    Grinnell College also failed to investigate the claims of multiple other women
against the Perpetrator.

246.    Jane suffered rape and sexual assault as a result of Grinnell College's policies,
acts, or failures to act. Had Grinnell College acted to properly investigate and remedy the

numerous complaints against the Perpetrator that were made against the Perpetrator before the

Perpetrator raped and assaulted Jane, the Perpetrator would not have been on campus to do so.

247.    Jane's gender, and Grinnell College's desire to protect one of its star male athletes

and donors, was the motivating role in the disparate treatment described above.

248.    Grinnell College receives federal financial assistance and therefore is required to

follow the mandates of Title IX.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant,

Grinnell College, as follows:

A.      Compensatory damages in an amount to be determined at trial;

B.      Punitive damages;

C.      Injunctive relief requiring Grinnell College to (a) take effective steps to prevent

sex-based discrimination and harassment, including sexual assault, in its education

programs; (b) fully investigate conduct that may constitute sex-based harassment and/or

sexual assault; (c) appropriately respond to all conduct that may constitute sex-based

harassment and/or sexual assault; (d) treat all victims as complainants and provide such

victims with "complainant" rights under Title IX and Grinnell College's Policy,

regardless of whether the victims want to remain anonymous or pursue a formal

investigation; and (e) mitigate the effects of harassment and/or assault including by

eliminating any hostile environment that may arise from or contribute to it;

D.      Plaintiff's attorneys' fees and costs; and

E.      For such other relief as the Court deems proper.

**COUNT VII**
**42 U.S.C. § 1983**
**Violation of Constitutional Rights**

249. The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

250. Jane has a substantive due process right under the due process clause of the Fourteenth Amendment to the United States Constitution, which prohibits the deprivation of life, liberty, or property without due process of law.

251. Pursuant to 42 U.S.C. §1983:

> *Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. §1983.

252. "[I]n any §1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part not relevant here, by *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986)).

253. Jane has a liberty interest in remaining free from arbitrary intrusions by the Perpetrator upon Jane's bodily integrity.

254.     Grinnell College violated Jane's rights to liberty by the Perpetrator's sexual abuse on Jane's bodily integrity.

255.     Grinnell College knew or should have known about the Perpetrator's prior misconduct, or acted with deliberate indifference.

256.     Jane has suffered, and will continue to suffer, actual, emotional and psychological distress and damages as a direct result of Grinnell College's actions and indifference.

257.     Jane is entitled to recover punitive damages and attorneys' fees.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.     Compensatory damages in an amount to be determined at trial;

B.     Punitive damages;

C.     Injunctive relief requiring Grinnell College to (a) take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; (b) fully investigate conduct that may constitute sex-based harassment and/or sexual assault; (c) appropriately respond to all conduct that may constitute sex-based harassment and/or sexual assault; (d) treat all victims as complainants and provide such victims with "complainant" rights under Title IX and Grinnell College's Policy, regardless of whether the victims want to remain anonymous or pursue a formal investigation; and (e) mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it;

D.     Plaintiff's attorneys' fees and costs; and

E.     For such other relief as the Court deems proper.

**COUNT VIII**
**Iowa State Law – Breach of Contract**

258.    The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

259.    Under Iowa law, Grinnell's Sexual Misconduct Policy created a contractual relationship between Grinnell and its students. *See, e.g. T.E. v. Linn-Mar Community School Dist.*, No. LACV 35077, 2000 WL 34514000 (Iowa Dist. Ct. Aug. 30, 2000); *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443 (1984).

260.    Grinnell breached the Policy by:

a.    Failing to follow its own Policies and procedures in place under Title IX;

b.    Failing to adequately and properly investigate allegations of rape and sexual assault perpetuated upon Jane;

c.    Failing to adequately and properly follow proper procedures in holding the hearing;

d.    Depriving Jane with complainant and victim rights, as set forth above;

e.    Failing to properly and promptly respond to the complaints of Title IX sex-based discrimination;

f.    Failing to protect Jane from sex-based discrimination;

g.    Failing to apply its Policy consistently to Jane, as a victim of rape and sexual assault, among other things;

h.    Failing to report the perpetrator for the violent rape and sexual assault of Jane after receiving information from Jane during multiple encounters with at least six different administrators and agents of Grinnell College

i. Failing to report the perpetrator for rape and sexual assault after receiving information from Jane and her father during multiple encounters with at least three different administrators of Grinnell College that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of rape and sexual assault on Grinnell's campus;

j. Discouraging Jane from formally reporting the perpetrator or the incident during multiple encounters with Ms. Asberry;

k. Referring Jane to a theologian after she disclosed her violent rape and sexual assault to Grinnell's Title IX department;

l. Incorrectly informing Jane that she could not make an anonymous complaint, and repeatedly telling Jane that the only way Grinnell could take action against the perpetrator was by Jane filing a formal Title IX complaint as a petitioner;

m. Failing to provide any assurances to Jane about security precautions that could be taken on campus or about Title IX's protections against retaliation;

n. Ms. Asberry's repeated suggestion that Jane sit down with the perpetrator "face-to-face" to "mediate" her violent rape and sexual assault with the perpetrator;

o. Failing to complete the formal Title IX proceedings within 45-90 days;

p. Publishing a preliminary report that was riddled with factual errors, misstatements of the applicable policy provisions, and obvious instances of gender bias;

q. Publishing to Jane a list of highly inflammatory and offensive additional questions which the perpetrator requested be asked of Jane, including (without limitation): whether Jane was wet when the perpetrator violently raped her;

whether Jane was a virgin at the time of her rape; and if Jane was not a virgin at the time of the rape, how she lost her virginity;

r.  Failing to provide the perpetrator with a copy of the formal complaint on a timely basis;

s.  Extending the final hearing unnecessarily;

t.  Failing to consider admissible evidence about the Perpetrator;

u.  Considering inadmissible evidence offered by the Perpetrator;

v.  Selecting sanctions against the perpetrator that were woefully inadequate and deeply biased in favor of the perpetrator;

w.  Selecting sanctions against the perpetrator that require Jane's actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery;

x.  Failing to create a safe and protected educational environment for Jane during the investigation and proceedings;

y.  Failing to provide Jane with reasonable accommodations for the completion of her major areas of study;

z.  Failing to communicate with Jane in a reasonable manner, including Grinnell's ongoing disregard for Jane's communications; and,

aa. Ignoring Jane's communications with the mathematics department;

bb. Dropping Jane's mathematics major without her request or consent;

cc. Withdrawing Jane from Grinnell College without her request or consent;

dd. Stripping Jane of academic honors in two of her major areas of study;

ee. Selecting sanctions against the perpetrator that were woefully inadequate and deeply biased in favor of the perpetrator;

ff. Selecting sanctions against the perpetrator that require Jane's actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing Jane, rather than allowing her any opportunity for closure or recovery;

gg. Failing to create a safe and protected educational environment for Jane during the investigation and proceedings;

hh. Failing to provide Jane with reasonable accommodations for the completion of her major areas of study;

ii. Failing to communicate with Jane in a reasonable manner, including Grinnell's ongoing disregard for Jane's communications; and,

jj. In other ways.

261. Jane suffered substantial economic losses as a result of the direct, proximate, and foreseeable consequence of the foregoing breaches.

262. As a result of the foregoing, Jane is entitled to damages in an amount to be determined at trial, plus prejudgment interest.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Plaintiff's attorneys' fees and costs; and

C. For such other relief as the Court deems proper.

## COUNT IX
### Iowa State Law – Breach of the Implied Covenant of Good Faith and Fair Dealing

263.     The above-numbered paragraphs are incorporated by reference as if fully-stated herein.

264.     Under Iowa law, Grinnell's Sexual Misconduct Policy created a contractual relationship between Grinnell and its students. *See, e.g. T.E. v. Linn-Mar Community School Dist.*, No. LACV 35077, 2000 WL 34514000 (Iowa Dist. Ct. Aug. 30, 2000); *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443 (1984).

265.     Under Iowa law it is generally recognized that there is an implied covenant of good faith and fair dealing in a contract. *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 684 n. 4 (Iowa 2001).

266.     Grinnell breached that covenant in the following ways:

    a.   Failing to investigate Jane's allegations on a timely basis;

    b.   Failing to investigate Jane's allegations pursuant to the requirements of Grinnell's Policy;

    c.   Failing to complete Jane's Title IX proceeding on a timely basis;

    d.   Failing to consider admissible evidence about the Perpetrator;

    e.   Failing to assign an appropriate sanction against the Perpetrator; and,

    f.   In other ways.

267.     As a result of the foregoing, Jane is entitled to damages in an amount to be determined at trial, plus prejudgment interest.

268.     Jane suffered substantial economic losses as a result of the direct, proximate, and foreseeable consequence of the foregoing breaches.

269.     As a result of the foregoing, Jane is entitled to damages in an amount to be determined at trial, plus prejudgment interest.

WHEREFORE, Plaintiff prays for a judgment in her favor and against the Defendant, Grinnell College, as follows:

A.     Compensatory damages in an amount to be determined at trial;

B.     Plaintiff's attorneys' fees and costs; and

C.     For such other relief as the Court deems proper.

## JURY DEMAND

Jane hereby requests a trial by jury on all issues properly triable thereto.

## CONCLUSION

WHEREFORE, Plaintiff prays that the court enter judgment in its favor and against Defendants awarding the relief requested herein and for such other and further relief as the Court deems just and equitable under the circumstances.

Dated: October 9, 2023

Respectfully Submitted by:

Charles N. Wittmack   AT0008976
Hartung Schroeder, LLP
303 Locust Street, Suite 300
Des Moines, IA 50309
(515) 282-7800 / (515) 282-8700 (fax)
wittmack@hartungschroeder.com
**ATTORNEY FOR PLAINTIFF**