IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JANE DOE,<br><br>      Plaintiff,<br><br>v.<br><br>GRINNELL COLLEGE, BAILEY ASBERRY as an agent of Grinnell College, BEN NEWHOUSE as an agent of Grinnell College, SARAH NEWELL as an agent of Grinnell College, ERIK KOHL as an agent of Grinnell College, ANNE HARRIS as an agent of Grinnell College, DEANNA SHORB as an agent of Grinnell College, and DEMETRIUS PETERSON as an agent of Grinnell College,<br><br>      Defendants. | **No. 4:23-cv-00400-RGE-HCA**<br><br><br>**ORDER GRANTING IN PART DEFENDANT GRINNELL COLLEGE'S PARTIAL MOTION TO DISMISS AND GRANTING DEFENDANTS ASBERRY, NEWHOUSE, NEWELL, HARRIS, AND PETERSON'S MOTIONS TO DISMISS** |

## I.  INTRODUCTION

Plaintiff Jane Doe is a former student of Defendant Grinnell College. Per the allegations in her complaint, Doe, a female, was sexually assaulted twice by a male student while both attended Grinnell. Following these incidents Doe sought help from Grinnell staff and filed a formal complaint against her assailant with Grinnell's Title IX Coordinator. During this period, she interacted with Defendants Bailey Asberry, Ben Newhouse, Sarah Newell, Erik Kohl, Anne Harris, Deanna Shorb, and Demetrius Peterson. Doe now sues Grinnell, as well as these individual defendants as agents of Grinnell. She asserts nine counts against Defendants, alleging violations of Title IX of the Education Amendments of 1972 (Counts I–VI), violation of the Fourteenth Amendment (Count VII), and breach of contract (Counts VIII–IX).

Now before the Court are Grinnell's partial motion to dismiss and Asberry, Newhouse, Newell, Harris, and Peterson's (the Individual Moving Defendants') motions to dismiss. Grinnell moves for partial dismissal of Doe's claims. It asks the Court to dismiss most of Doe's Title IX

claims, Doe's constitutional claim, part of Doe's first contract claim, and Doe's request for punitive damages in connection with her Title IX claims. The Individual Moving Defendants join Grinnell in these requests and further move to dismiss all claims asserted against them. For the reasons set forth below, the Court grants in part and denies in part Grinnell's motion and grants Asberry, Newell, Newhouse, Harris, and Peterson's motions.

## II.   BACKGROUND

### A.   Factual Background

For the purpose of analyzing the motions to dismiss, the Court accepts as true the complaint's factual allegations and grants all reasonable factual inferences to Doe. *See Du Bois v. Bd. of Regents of Univ. Minn.*, 987 F.3d 1199, 1202 (8th Cir. 2018). Where indicated, the Court also considers Grinnell's "Policy, Procedures and Guide to Preventing, Reporting, and Responding to Sexual Misconduct and Other Forms of Interpersonal Violence" (Grinnell's Title IX Policy). *See* Def. Grinnell's Ex. A Supp. Mot. Dismiss, ECF No. 7-2; *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (holding "documents necessarily embraced by the complaint" including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings" may be considered in deciding a Rule 12 motion to dismiss (internal quotation marks and citations omitted)); *see generally* Pl.'s Br. Supp. Resist. Defs.' Mots. Dismiss, ECF No. 15-1 (not contesting authenticity of ECF No. 7-2).

In September 2018, Doe began her studies as a freshman at Grinnell. Compl. ¶ 14, ECF No. 1. She resided in a dormitory on Grinnell's campus at that time. *See id.* ¶¶ 2, 16. On April 20, 2019, Doe was raped by another student in her dorm room. *Id.* ¶¶ 16–18. "During [Doe]'s rape, the perpetrator used extreme physical force, violently maneuvering [Doe] around her dormitory room, knocked over [Doe]'s bookshelf with a violent blow from [Doe]'s head, and repeatedly sexually penetrated her without a condom." *Id.* ¶ 18. "The perpetrator was a Grinnell student-

athlete and the son of a significant Grinnell donor." *Id.* ¶ 17. Approximately two weeks later, the same student sexually assaulted Doe again during an on-campus party. *Id.* ¶ 19. He assaulted Doe "by pinching and twisting her nipple and pouring a drink on her." *Id.*

Following these assaults Doe's mental health deteriorated. *Id.* ¶ 20. On January 28, 2020, she emailed a Grinnell Student Health associate to request a mental health referral for a "sexual trauma therapist." *Id.* ¶ 22. Doe was referred to Sarah Newell, a Grinnell nurse. *Id.* ¶ 25. Doe contacted Newell on January 28, 2020, who scheduled Doe for an appointment on February 11, 2020. *Id.* ¶¶ 26–27. On February 11, 2020, Doe met with Newell and told Newell she needed an immediate referral to a mental health expert because she was suffering from significant mental health issues resulting from the assaults she experienced. *Id.* ¶ 30. Newell referred Doe to Erik Kohl, a licensed mental health counselor operating in the town of Grinnell. *Id.* ¶ 37. On February 17, 2020, Doe met with Kohl. *Id.* ¶ 39. Kohl diagnosed Doe with post-traumatic stress disorder from sexual trauma, and he met with Doe twice per week until March 13, 2020, when Grinnell's campus was closed due to the onset of the coronavirus pandemic. *See id.* ¶¶ 45–46.

While Doe was away from campus, Doe and her family became aware of an Instagram account with the handle "@MeTooGrinnell." *Id.* ¶¶ 47, 50. As of August 2020, the account contained approximately 120 posts in which students alleged they had been subject to sexual assault on Grinnell's campus. *See id.* ¶ 48. Some of these posts alleged the student who assaulted Doe had assaulted other women. *See id.* ¶¶ 50, 239. Prompted in part by the account, Doe's father contacted Grinnell's President, Anne Harris, to alert her about the allegation posted by @MeTooGrinnell and relayed his daughter's experiences of assault. *See id.* ¶¶ 51, 53. Harris responded to Doe's father by informing him of the availability of Title IX protections at Grinnell. *Id.* ¶ 52. On August 7, 2020, Harris told Doe's father she would ask Bailey Asberry, Grinnell's Title IX Coordinator, to assist Doe. *Id.* ¶ 53.

On August 9, 2020, Doe contacted Asberry. *Id.* ¶ 57. They met on August 18, 2020, and

at the meeting, Doe informed Asberry about her experiences of assault, the contents of the @MeTooGrinnell posts, her fears about being on campus, her fears of experiencing retaliation if she made a formal complaint, and her continuing mental health challenges. *Id.* ¶ 62. In response, Asberry repeatedly discouraged Doe from filing a formal complaint and concluded the meeting by stating she would refer Doe to Deanna Shorb, the Dean of Religious Life at Grinnell who had a religious role at the Center for Religion, Spirituality, and Social Justice. *Id.* ¶¶ 65, 65 n.2, 74. On September 15, 2020, Asberry connected Doe with Shorb. *Id.* ¶ 68. Doe and Shorb met on September 21, 2020, and Doe disclosed to Shorb her experiences of assault, the contents of the @MeTooGrinnell posts, her fears about being on campus, her fears of experiencing retaliation if she made a formal complaint, and her continuing mental health challenges. *Id.* ¶¶ 69–70. Shorb told Doe she should return to Asberry and push for an investigation of the incidents of assault. *Id.* ¶ 73. In further communications, however, Asberry continued to discourage Doe from filing a formal complaint, incorrectly informing Doe she could not make an anonymous complaint, and repeatedly telling Doe the only way Grinnell could take action against the perpetrator was by Doe filing a formal complaint with the Title IX office. *Id.* ¶ 75. Asberry also suggested Doe sit down for a face-to-face mediation with the student who assaulted her. *Id.* ¶ 78. Doe refused to do this. *Id.* In September and October 2020, Doe made three separate requests to proceed with an investigation. *Id.* ¶ 79. Asberry stated after the third request, that Doe's experiences of assault were "not severe enough." *Id.* ¶ 80.

In April 2021, Doe contacted Asberry to ask whether she would be granted accommodations to ensure her safety from physical violence and other retaliation by the perpetrator if Doe were to return to campus. *Id.* ¶ 84. Asberry did not respond. *Id.* ¶ 85. On May 11, 2021, Doe contacted Asberry again and they scheduled a meeting for May 17, 2021. *Id.* ¶ 87. On May 14, 2021, Doe again contacted Asberry to state her intention to file a formal complaint under Grinnell's Title IX Policy at their upcoming meeting. *Id.* ¶ 88. At the meeting on May 17,

2021, Asberry processed Doe's complaint. *Id.* ¶ 92. On May 24, 2021, Ben Newhouse, Grinnell's

Dean of Students, sent notices of investigation to Doe and the student who assaulted her. *Id.* ¶ 93.

Grinnell appointed Demetrius Peterson, an attorney associated with the law firm Husch

Blackwell, to serve as Grinnell's investigator. *Id.* ¶ 94. Peterson concluded his investigation on

August 25, 2021. *Id.* ¶ 97. The investigation included six people and a total of eleven interviews.

*Id.* ¶¶ 96–97. On September 10, 2021, Peterson circulated his preliminary report. *Id.* ¶ 101. The

report included factual errors and misstatements of Grinnell's Title IX Policy. *Id.* ¶ 103. These

included the misstatement of the location where one of the assaults occurred, the false statement

that Doe and the perpetrator had engaged in a "romantic" relationship, errors in quotations of the

language of Grinnell's Title IX Policy, misstatement of the definition of "incapacitation" in the

Policy, and shifting the burden of proving consent from the alleged perpetrator to the victim of

assault—contrary to the Policy. *Id.* After Peterson provided the preliminary report to Doe, Peterson

provided Doe with a set of questions the perpetrator wanted Peterson to ask Doe. *Id.* ¶ 104. The

questions asked "whether [Doe] was wet when [he] . . . raped her; whether [Doe] was a virgin at

the time of her rape; and if [Doe] was not a virgin at the time of the rape, how she lost her virginity."

*Id.* Although Grinnell's Title IX Policy states a complainant's prior sexual history is "not relevant,"

*see* ECF No. 7-2 at 58–59, Peterson communicated these questions to Doe, ECF No. 1 ¶ 104. Doe

found these questions highly inflammatory and offensive. ECF No. 1 ¶ 104. Peterson provided his

final report on October 8, 2021. *Id.* ¶ 105.

On October 15, 2021, Doe emailed Asberry and Newhouse to share that she did not

feel safe returning to Grinnell's campus while the formal Title IX complaint process was pending.

*Id.* ¶ 106. Given this concern, she requested that she be permitted to complete her coursework

remotely or to graduate early. *Id.* Doe had been approved to graduate with three majors and had

completed all of her coursework for these majors except for one required course in her math major.

*Id.* ¶ 107, 107 n.3. Asberry assured her an accommodation would be made to allow her to complete

each of her major areas of study without requiring Doe to return to campus. *Id.* ¶ 108. On November 3, 2021, Grinnell's Committee on Academic Standing (CAS) approved Doe for early graduation but did not address how she would complete her last math course. *Id.* ¶¶ 113, 119. Grinnell's registrar initially denied Doe's request to complete her last math course remotely; but after Doe's father contacted President Harris about this issue, Harris intervened, and Doe was approved to take her final math course out-of-residence in the spring of 2022. *Id.* ¶¶ 130, 133–34.

The hearing on Doe's formal Title IX complaint was scheduled for February 8, 2022. *Id.* ¶ 136. But at 10:26 PM on the night before the hearing, Asberry emailed the parties to inform them the hearing would be continued because she, Newhouse, and Peterson had all failed to provide the perpetrator with a copy of the roughly two-page complaint document. *Id.* ¶¶ 137, 139.[1] Asberry had processed Doe's complaint, and Newhouse had sent the parties notices of investigation, in May 2021, ten months prior. *Id.* ¶¶ 92–93, 137. The hearing was continued by two months and set for April 8, 2022. *Id.* ¶ 140. The hearing took place on April 8, 2022, *id.* ¶ 143, and on April 19, 2022, the hearing adjudicator found the student who assaulted Doe responsible for "Sexual Assault Non-consensual Sexual Intercourse" and "Sexual Assault Non-consensual Sexual Contact," *Id.* ¶ 145. Based on these findings, Newhouse, as Grinnell's Dean of Students, determined the college would issue five sanctions against the perpetrator: 1) probation for the twenty-three days remaining until graduation; 2) a no-contact order between Doe and the perpetrator; 3) "loss of social privileges"; 4) barring the perpetrator from participating in graduation activities unless Doe chose not to attend; and 5) barring the perpetrator from future alumni events unless Doe chose not to attend. *See id.* ¶ 148; *see also id.* ¶ 5; ECF No. 7-2 at 41, 66 (stating the "Senior Official" determines the appropriate sanctions based on the findings from

---

[1] According to Grinnell's Title IX Policy, the parties can request to have a hearing rescheduled, but "[a]bsent extenuating circumstances" the request must be submitted at least five business days prior to the hearing. ECF No. 7-2 at 62.

the adjudication and for proceedings wherein the perpetrator is a student, the "Senior Official" is the Dean of Students). In May 2022, Doe graduated from Grinnell College with three majors and with honors in one of her majors. *Id.* ¶¶ 2, 153.

Additional facts are set forth below as necessary.

### B.   Procedural Background

In October 2023, Doe filed her complaint in this action against Grinnell, Newell, Kohl, Asberry, Shorb, Harris, Newhouse, and Peterson. ECF No. 1 ¶¶ 3–10. Each of the defendants other than Grinnell are sued "as Agent[s] of Grinnell College." *Id.* at 1. Doe asserts nine counts against Defendants, alleging violations of Title IX (Counts I–VI), violation of the Fourteenth Amendment (Count VII), and breach of contract (Counts VIII–IX). *Id.* ¶¶ 157–269. Doe also states a request for punitive damages in connection with each of her Title IX claims and her Fourteenth Amendment claim. *Id.* at 30, 36, 40, 45, 48, 50, 52.

On November 21, 2023, Grinnell filed a motion for partial dismissal of Doe's claims, arguing she failed to state a plausible claim for relief in support of most of her counts. Def. Grinnell's Mot. Dismiss, ECF No. 7; Def. Grinnell's Br. Supp. Mot. Dismiss, ECF No. 7-1. On the same day, Asberry, Newell, Newhouse, and Harris also filed a motion to dismiss, asking the Court to dismiss all claims against them. Defs. Asberry, Newell, Newhouse, and Harris's Mot. Dismiss, ECF No. 8. These defendants also joined the arguments asserted by Grinnell in support of its partial motion to dismiss. *Id.* ¶ 9. In December 2023, Doe twice requested extensions of the deadline to file her resistance, and on December 19, 2023, the Court granted the latter request, permitting Doe to respond to the motions by December 22, 2023. Pl.'s Mot. Extension Resist. Deadline, ECF No. 9; Pl.'s Second Mot. Extension Resist. Deadline, ECF No. 11; Text Order Granting Pl.'s Second Mot. Extension Resist. Deadline, ECF No. 12. On December 22, 2023, Doe filed her resistance to the motions. Pl.'s Resist. Defs.' Mots. Dismiss, ECF No. 15; Pl.'s Br. Supp. Resist. Defs.' Mots. Dismiss, ECF No. 15-1. On January 2, 2024, Peterson filed a motion to dismiss

all claims against him and also joined Grinnell's arguments against Doe's claims. Def. Peterson's Mot. Dismiss, ECF No. 16. Doe never filed a resistance to this motion. On January 4, 2024, Grinnell, Asberry, Newhouse, Newell, and Harris, filed a joint reply in support of their motions to dismiss. Defs. Grinnell, Asberry, Newhouse, Newell, and Harris's Reply Supp. Mots. Dismiss, ECF No. 17.

The parties did not request oral argument and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c). Having considered the parties' briefing and applicable law, the Court grants in part Grinnell's motion to dismiss and grants in full the remaining two motions to dismiss.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A plaintiff must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

In ruling on a Rule 12(b)(6) motion to dismiss, a court's review is limited to the complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 954 (8th Cir. 2007) (alteration in original) (internal quotation marks and citation omitted). Matters "outside the pleading" are not considered, including "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Charles Alan Wright, et al., Federal Practice and Procedure § 1366); *see also Summers Mfg. Co., Inc. v. Tri-Cnty. AG, LLC*, 300 F. Supp. 3d 1025, 1035 (S.D. Iowa 2017) (collecting cases).

## IV.    DISCUSSION

Collectively, the three motions to dismiss filed by Grinnell and the Individual Moving Defendants seek dismissal of most of Doe's complaint. *See* ECF No. 7; ECF No. 8; ECF No. 16. Doe's single resistance, however, only addresses part of Grinnell's motion to dismiss—the part of that motion concerning Doe's Title IX claims (Counts I–VI). *See* ECF No. 15-1. Her resistance is silent on the aspects of Grinnell's motion seeking to dismiss Doe's Fourteenth Amendment claim (Count VII), parts of her breach of contract claim (Count VIII), and her request for punitive damages in connection with her Title IX claims. *See* ECF No. 7 at 5; *see generally* ECF No. 15-1. Doe's resistance is also silent on the motion to dismiss filed by Asberry, Newhouse, Newell, and Harris, which asks the Court to dismiss all claims against them. ECF No. 8; *see generally* ECF No. 15-1. Moreover, Doe did not resist Peterson's motion to dismiss, which asserts the same arguments for dismissal of all claims against him as asserted by Asberry, Newhouse, Newell, and

Harris in support of their motion. *See* ECF No. 16; Def. Peterson Br. Supp. Mot. Dismiss, ECF No. 16-1.

The Court first addresses the disputes concerning the resisted aspects of Grinnell's motion to dismiss. The Court then turns to the unresisted aspects of Grinnell's motion and the unresisted motions filed by the Individual Moving Defendants.

### A.    Grinnell's Partial Motion to Dismiss

#### 1.    Resisted aspects of Grinnell's motion: Doe's Title IX claims (Counts I–VI)

Doe's complaint asserts six Title IX claims under five different legal theories. First, her complaint asserts Grinnell violated Title IX because Grinnell administrators were deliberately indifferent to Doe's experience of sexual harassment, including her experiences of sexual assault. *See* ECF No. 1 ¶¶ 157–71 (Count I); *accord* ECF No. 15-1 at 5; *id.* at 3 ("Counts I and II includ[e] allegations related to harassment"). Second, Doe's complaint asserts the same harassment violated her rights under Title IX because it created a hostile educational environment. ECF No. 1 ¶¶ 172–86 (Count II). Third, Doe asserts Grinnell retaliated against her after she reported her experiences of sexual assault. *Id.* ¶¶ 187–220 (Counts III and IV). Fourth, Doe's complaint asserts Grinnell's Title IX adjudication discriminated against her by producing an erroneous result due to sex-based bias. *Id.* ¶¶ 221–34 (Count V). Fifth, Doe's complaint further asserts Grinnell discriminated against her throughout its administration of her report of assault and subsequent complaint by treating her unfavorably due to her status as a female. *Id.* ¶¶ 235–48 (Count VI).

Grinnell moves to dismiss in their entirety the counts asserting harassment and discrimination theories—Counts I, II, V, and VI. ECF No. 7-1 at 1–9. It also moves to dismiss in part the counts asserting retaliation theories—Counts III and IV. *Id.* at 9–10. Grinnell argues Doe's harassment claims must be dismissed because she has not alleged any instances of sexual harassment caused by Grinnell's deliberate indifference. *Id.* at 1–5. As to the discrimination

claims, Grinnell argues these must be dismissed because Doe has not adequately alleged sex-based bias. *Id.* at 6–9. Grinnell also argues several aspects of Doe's harassment and discrimination claims are time-barred. It argues any claims reliant on alleged acts of deliberate indifference prior to Doe's assault in April 2019 are time-barred. *Id.* at 9. Grinnell further argues the parts of Doe's retaliation claims relying on retaliatory actions that occurred before October 10, 2021 are also time-barred. *Id.* at 9–10. Doe resists these arguments. ECF No. 15-1 at 4–12.[2]

To address these disputes, the Court first examines the applicable statute of limitations and the rules of accrual that determine when the limitations period begins to run. The Court then turns to the disputes concerning Doe's claims, first addressing disputes as to the merits of Doe's claims—where these have been raised—and then addressing the issue of whether the claims have been time-barred despite their merits. Addressing Doe's claims in this manner, the Court finds Doe's discrimination claims survive Grinnell's motion to dismiss but her harassment claims do not. Grinnell's motion to dismiss parts of Doe's retaliation claims is also granted.

a.    The statute of limitations and rules of accrual under Title IX

"Title IX does not include a statute of limitations. Instead, Title IX claims are 'governed by the state's personal injury statute of limitations.'" *Mayer v. Iowa State Univ.*, 915 F.3d 1210, 1212 n.3 (8th Cir. 2019) (quoting *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011)). Iowa's

---

[2] Even where Doe presents an argument in resistance, her legal analysis is limited—in many places without any citation to the law or the complaint. *See generally* ECF No. 15-1 at 3–12. Nonetheless, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1058 (8th Cir. 2013) (internal quotation and citation omitted). The Court looks to the complaint to determine whether there are "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory [she] advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief under any possible theory." *Topchian*, 760 F.3d at 848–49 (internal quotation marks and citation omitted). Accordingly, the Court looks to the complaint for its factual allegations, and when determining whether Grinnell has successfully argued no plausible claim is stated, the Court is not limited to the legal theories Doe asserted in defense of her complaint. *Cf. id.*

personal injury statute of limitations provides the limitations period runs for two years. *Id.*; *accord* Iowa Code § 614.1(2). Title IX does not, however, borrow the accrual rules of state law; rather, federal law sets these rules. *Sacks v. Univ. of Minn.*, 600 F. Supp. 3d 915, 939 (D. Minn. 2022) (citing *Martin v. Julian*, 18 F.4th 580, 583 (8th Cir. 2021); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006)); *see also Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995) (holding the same reasoning for looking to state law for the statute of limitations for § 1983 claims applies to Title VI and IX claims); *Martin*, 18 F.4th at 583 (noting the governing statute of limitations for § 1983 claims is the personal-injury tort statute of the state, but "[w]hen a § 1983 cause of action accrues (and the statute of limitations begins to run) is an issue of federal law").

Title IX claims "accrue 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Sacks*, 600 F. Supp. 3d at 939 (quoting *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081–82 (8th Cir. 2018) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (addressing § 1983 claims))); *see also King-White*, 803 F.3d at 761–63 (applying the same federal accrual rule to § 1983 and Title IX claims); *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698–99 (6th Cir. 2022) (same). The practical import of this rule depends on the type of claim.

Generally, a Title IX claim accrues on the date the plaintiff knew or should have known of events giving rise to the last-occurring element of the claim—which could be, depending on the claim, an act of deliberate indifference or an act of underlying harassment or other discrimination. *See Maher v. Iowa State Univ.*, No. 4:16-cv-570-HCA, 2018 WL 10344272, at *4 (S.D. Iowa Feb. 13, 2018). An exception to this rule applies to claims asserting a sexually hostile environment. For these claims, all instances of harassment contributing to the hostile environment are viewed together under the "continuing violation doctrine." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583–84 (5th Cir. 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002));

*accord Stanley*, 433 F.3d at 1136 (same). According to this doctrine, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Sewell*, 974 F.3d at 584 (quoting *Morgan*, 536 U.S. at 117); *see also Varner v. Nat'l Super Mkts., Inc.*, 94 F.3d 1209, 1214 (8th Cir. 1996) (noting the limitations period for a hostile environment claim runs from the "last occurrence of discrimination" (internal quotation marks and citation omitted)). In contrast, other acts of harassment, discrimination, and retaliation are treated as discrete acts, each of which "starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 110, 113.[3]

b.      Counts I and II: Harassment

Grinnell moves to dismiss Counts I and II on the grounds that Doe's complaint fails to identify any sexual harassment caused by Grinnell's alleged deliberate indifference. ECF No. 7-1 at 1–5. Grinnell argues the only instances of sexual harassment alleged are the two sexual assaults by the perpetrator that were not caused by Grinnell—and even if Grinnell had made Doe vulnerable to this harassment, a claim based on such action would be time-barred. *Id.* at 1–5, 9; ECF No. 17 at 5. Grinnell also argues the Eighth Circuit "has never recognized a 'hostile educational environment claim' separate and apart from a deliberate indifference [to sexual harassment] claim under Title IX." ECF No. 7-1 at 4. For these reasons, Grinnell argues, Doe's allegations fail to establish Grinnell is liable for sexual harassment or a hostile educational environment under Title IX. *Id.* at 1–5. For the reasons set forth below, the Court concludes this part of Grinnell's argument is largely unsuccessful, but Grinnell is ultimately correct that Doe's

---

[3] *Morgan* further explains:

> The existence of past acts and the [plaintiff's] knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory [or retaliatory] and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

526 U.S. at 113.

harassment claims are time-barred.

Contrary to Grinnell's primary argument, Doe's allegations identify sexual harassment for which Grinnell is liable under Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *accord K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017).[4] Sexual harassment is "a form of sex discrimination for Title IX purposes." *Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021) (citation omitted). "Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)); *see also Stanley*, 433 F.3d at 1137 (9th Cir. 2006) (describing sexual harassment as unwelcome "verbal or physical conduct of a sexual nature"). Incidents of sexual assault, including rape, have been treated as forms of sexual harassment properly asserted within a deliberate indifference claim under Title IX. *See Shank*, 993 F.3d at 573.

Under Title IX, a college like Grinnell is liable if it is deliberately indifferent to "sexual harassment, of which [it] ha[s] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school." *Davis ex. rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). A response to harassment, or the lack thereof, constitutes deliberate indifference if it is "clearly unreasonable in light of the known circumstances." *Shank*, 993 F.3d at 573 (quoting *Davis*, 526 U.S. at 648) (citation omitted). Liability further requires that the school exercised

---

[4] Title IX's prohibition of sex-based discrimination includes a prohibition of discrimination on the basis of gender identity. *See Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 670 (8th Cir. 2023) (Kelly, J. concurring) (citing *Horton v. Midwest Geriatric Mgmt., LLC*, 963 F.3d 844, 847 (8th Cir. 2020) (discussing federal anti-discrimination law under Title VII)).

"substantial control over both the harasser and the context in which the known harassment occur[ed]," *Davis*, 526 U.S. at 645, and that the deliberate indifference caused the plaintiff to "undergo harassment or ma[d]e them liable or vulnerable to it," *K.T.*, 865 F.3d at 1057–58 (quoting *Davis*, 526 U.S. at 644–45).

The first and second counts Doe asserts are styled, respectively, as a "[d]eliberate [i]ndifference" claim and a claim for "creation of a [h]ostile [e]ducation [e]nvironment." ECF No. 1 at 26, 31. The counts assert substantially identical allegations, but the former asserts Grinnell was deliberately indifferent to sexual harassment, whereas the latter asserts a slightly expanded list of harassment events and frames these events as creating a hostile education environment. *Compare id.*, *with id.* ¶¶ 172–86.

The pleading of both of these counts, however, is obscured by an ambiguity between two theories—the first seeking to hold Grinnell liable for the actions of the student who assaulted Doe and the second seeking to hold Grinnell liable for harassment of Doe by Grinnell staff. This ambiguity arises from an inconsistency between two kinds of allegations. Some allegations, like those in paragraph 161 for instance, imply the student who sexually assaulted Doe is the harasser under the theory of the claim. *id.* ¶ 161 (alleging Grinnell "exercised substantial control over the Perpetrator [of Doe's assault]"); *see also id.* ¶ 176 (same). Other allegations, however, instead imply Grinnell staff enacted the targeted harassment. *Id.* ¶ 165 (alleging Grinnell's "misconduct was so severe, pervasive, and objectively offensive that it deprived [Doe] of her access to educational opportunities or benefits"); *see also id.* ¶ 180 (same); *cf. Davis*, 526 U.S. at 650 (explaining the harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"); *Shank*, 993 F.3d at 573.

To resolve this ambiguity, the Court interprets both counts as alleging the perpetrator

committed the harassment for which the counts assert Grinnell is liable.[5] Grinnell argues both counts would fail under this theory because, per Doe's allegations, Grinnell did not make Doe susceptible to the risk the perpetrator could sexually assault her and Grinnell was not actually aware the perpetrator posed a risk of sexual harassment to Doe until after the sexual assaults occurred. ECF No. 7-1 at 1–5, 8–9. Grinnell's argument, however, overlooks a third incident of sexual harassment by the perpetrator adequately alleged in Doe's complaint.

Doe alleges a third incident of sexual harassment by the perpetrator during Peterson's investigation, and due to this allegation, Doe adequately alleges deliberate indifference to sexual harassment. She alleges the perpetrator requested Peterson ask Doe several questions, including the following: "whether [Doe] was wet when the perpetrator violently raped her; whether [Doe] was a virgin at the time of her rape; and if [Doe] was not a virgin at the time of the rape, how she lost her virginity." ECF No. 1 ¶¶ 104, 162(o), 177(u); *cf. Jennings*, 482 F.3d at 695. The questions include "sex-specific language," and because they were asked by the person that raped and assaulted Doe, the Court reasonably infers the questions were "aimed to humiliate, ridicule, or intimidate." *Cf. Jennings*, 482 F.3d at 695. Moreover, in light of this context, Peterson's decision to deliver these questions in September 2021 was "clearly unreasonable," and for this reason, that decision exhibited deliberate indifference. *Cf. Shank*, 993 F.3d at 573. Further, this harassment was unquestionably within the "substantial control" of Grinnell because it would not have been

---

[5] Doe's resistance appears to favor the opposite interpretation. *See* ECF No. 15-1 at 5 ("[Doe's] Complaint makes clear that Grinnell's harassment of [Doe] covered not only nearly her entire academic career at Grinnell, but will also extend to her life after her academic career at Grinnell was completed . . . ."); *see also id.* at 6 (referencing each incident of repeating her report of descriptions of her experience of sexual assault to Grinnell staff as "its own incident of harassment"). But Doe does not allege any instances of sexual harassment by Grinnell administrators. *See* ECF No. 1 ¶¶ 157–86; *Jennings*, 482 F.3d at 695 ("Sexual harassment occurs when the victim is subject to sex-specific language that is aimed to humiliate, ridicule, or intimidate."). As discussed below, however, Doe's allegations concerning the behavior of Grinnell's agents adequately allege sex-based bias and are properly situated within a discrimination claim not reliant on a theory of harassment.

completed but for Peterson's delivery of the questions to Doe. *Cf. Davis*, 526 U.S. at 645. For this reason, Peterson's deliberate indifference to the perpetrator's harassment caused Doe to undergo this incident of harassment. *Cf. K.T.*, 865 F.3d at 1057–58. The harassment was also a third incident of harassment following Doe's two experiences of sexual assault by the perpetrator, and the three incidents of harassment may be viewed collectively as sufficiently pervasive to have the "systematic effect" of denying Doe educational opportunities at Grinnell. *Id.* at 1059 (analyzing harassment before and after the defendant's actual knowledge of harassment to assess its systematic effect). Accordingly, Grinnell's argument that Doe fails to allege Grinnell made her susceptible to sexual harassment is unpersuasive. *Id.* at 1057–58. Rather, Doe adequately alleges Grinnell's deliberate indifference caused Doe to experience this incident of sexual harassment. *Cf. id.*

Furthermore, in light of this incident of harassment, Doe's remaining allegations support the reasonable inference that Grinnell's deliberate indifference caused Doe to be vulnerable to further harassment. *Cf. id.* Agents of Grinnell exhibited continued deliberate indifference to the seriousness of Doe's allegations after Peterson submitted his report. This indifference was exhibited on February 8, 2022, when Asberry, on the eve of the hearing of Doe's Title IX complaint, emailed Doe and the perpetrator to inform them the hearing would be continued by two months because three agents of Grinnell failed to deliver to the perpetrator a two-page document that had been in their possession for nearly ten months. *See* ECF No. 1 ¶ 137. This failure followed several meetings between Asberry and Doe in which Asberry discouraged Doe from proceeding with her complaint, told Doe her experiences of assault were "not severe enough" for an investigation, and repeatedly encouraged Doe to participate in a face-to-face mediation with the perpetrator. *See id.* ¶¶ 65, 75, 78–81, 90. In light of these allegations and the allegations concerning Peterson discussed above, the Court finds it reasonable to infer that the serially unreasonable actions of Asberry, Grinnell's Title IX coordinator, continued to render Doe vulnerable to further

harassment by the perpetrator throughout the remainder of the administration of Grinnell's Title IX proceedings—including during the hearing that took place in April 2022. *Id.* ¶ 140. Because the perpetrator had been permitted to harass Doe through the Title IX investigation, the Court finds it reasonable to infer Doe was vulnerable to further harassment by the perpetrator through and during the Title IX hearing itself. *Id.*; ECF No. 7-2 at 61 (noting that during the hearing one party may be caused to hear the other party answering questions). These allegations thus support the conclusion that Doe has adequately alleged Grinnell's deliberate indifference made her vulnerable to further harassment by the perpetrator, at least until April 2022. *Cf. K.T.*, 865 F.3d at 1057–58.

Turning to Doe's second count, the Court finds the same allegations discussed above assert a plausible claim that Grinnell is liable for a sexually hostile educational environment created by the perpetrator. Grinnell argues the Eighth Circuit has never recognized such a claim "separate and apart" from a deliberate indifference claim. ECF No. 7-1 at 4. But whether or not such a claim overlaps with a claim for deliberate indifference to an individual instance of sexual harassment, the Eighth Circuit has in fact recognized a hostile environment claim under Title IX.

Relying on *Kinman v. Omaha Public School District*, federal district courts in Missouri have recently stated the elements of a "Title IX hostile environment claim" as follows:

> The plaintiff must show: "1) that [she] belongs to a protected group; 2) that [she] was subject to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of [her] education and create an abusive educational environment; and 5) that some basis for institutional liability has been established."

*Doe v. Washington Univ.*, 434 F. Supp. 3d 735, 754 (E.D. Mo. 2020) (quoting *Kinman v. Omaha Pub. Sch. Dist. (Kinman I)*, 94 F.3d 463, 467–68 (8th Cir.1996), *rev'd on other grounds by Kinman v. Omaha Pub. Sch. Dist. (Kinman II)*, 171 F.3d 607, 610 (8th Cir. 1999)); *accord Salau v. Denton*, 139 F. Supp. 3d 989, 1000 (W.D. Mo. 2015). As recognized by *Washington University*, *Kinman I* set forth the elements of a claim of "[h]ostile environment sexual harassment." *Id.*; *Kinman I*, 94 F.3d at 467–78. *Kinman I* was filed before *Gebser v. Lago Vista Independent School District*,

which created the requirement of actual notice and deliberate indifference for Title IX liability. *Kinman II*, 171 F.3d at 610 (abrogating *Kinman I* in light of *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)). *Gebser*, however, simply gave the basis for liability for sexual harassment—thus clarifying the fifth element of the hostile environment claim recognized by *Kinman I*—and courts in this circuit have continued to analyze Title IX claims under the *Kinman I* paradigm after *Gebser. Washington Univ.*, 434 F. Supp. 3d at 754; *Salau*, 139 F. Supp. 3d at 1000; *Frederick v. Simpson Coll.*, 149 F. Supp. 2d 826, 835 (S.D. Iowa 2001).

Whether or not these elements are "separate and apart" from a claim for deliberate indifference to sexual harassment under Title IX, the same facts discussed above satisfy the elements of a hostile environment claim set forth in *Kinman I*: 1) Doe alleges she is female, *see, e.g.*, ECF No. 1 ¶ 236; 2) she alleges she experienced three instances of sexual harassment and her allegations support the inference that she remained vulnerable to sexual harassment at least until April 2022; 3) the content of the questions relayed by Peterson demonstrate the harassment was based on sex, *see id.* ¶ 104; 4) the systematic effect of the harassment was sufficiently severe and pervasive so as to alter the conditions of her education and create an abusive educational environment, *see, e.g.*, *id.* ¶¶ 20–29 (discussing the detrimental impact of the rape and sexual assault on Doe's mental health); and 5) Grinnell's deliberate indifference caused or made Doe vulnerable to sexual harassment at least between September 2021 and April 2022, *see id.* ¶¶ 104, 137, 143. Accordingly, Doe has adequately alleged a claim for "[h]ostile environment sexual harassment" under Title IX. *Kinman I*, 94 F.3d at 467–78.

Now turning to Grinnell's argument that parts of Doe's harassment claims are time-barred, Doe's allegation of a claim for hostile environment sexual harassment has some analytical import. As discussed, discrete acts of sexual harassment "start[] a new clock for filing charges alleging the act." *Morgan*, 536 U.S. at 110, 113. Doe filed her complaint on October 10, 2023, and the applicable limitations period is two years, so events that occurred on or after October 10, 2021,

can give rise to a timely action. *See* ECF No. 1; *Mayer*, 915 F.3d at 1212 n.3. Accordingly, claims asserting deliberate indifference to discrete acts of sexual harassment are time-barred if Doe could "file suit and obtain relief" for such a claim before October 10, 2021. *Sacks*, 600 F. Supp. 3d at 939. Indeed, this was the case on the date Peterson presented Doe the perpetrator's questions, because as of that date, Doe was given constructive notice that Grinnell's deliberate indifference had caused her to be harassed and that the harassment had a systematic effect. *Cf. K.T.*, 865 F.3d at 1057–59. Peterson presented the perpetrator's questions before October 8, 2021, the date Peterson published his final report. *See* ECF No. 1 ¶¶ 104–05. So, a claim reliant only on these incidents of sexual harassment would be time-barred. *Cf. Sacks*, 600 F. Supp. 3d at 939.

Under a claim for hostile environment sexual harassment, the analysis is different, but the claim does not overcome the time-bar. Hostile environment claims are subject to the "continuing violation doctrine," and under this doctrine, the claim is timely as long as "any act that is part of the hostile [educational] environment" is within the limitations period. *Stanley*, 433 F.3d at 1136 (quoting *Morgan*, 536 U.S. at 118). As discussed above, the Court views the alleged facts as establishing Grinnell's deliberate indifference caused Doe to be vulnerable to further sexual harassment until at least April 2022, a time period that extends into the limitations period. But "'[d]eliberate indifference' is the standard for imputing liability . . . not for establishing a hostile environment." *Id.* at 1137 (citing *Gebser*, 524 U.S. at 292–93); *accord Kinman II*, 171 F.3d at 609–10 (discussing *Gebser*, 524 U.S. 274). Because Doe does not allege any further acts of harassment that contributed to the hostile educational environment following the start of the limitations period on October 10, 2021, the continuing violation doctrine does not apply. *Cf. Stanley*, 433 F.3d at 1137 (concluding that, in the absence of a further act contributing to the hostile educational environment, the application of the continuing violation doctrine due to continued deliberate indifference would "render[] the statute of limitations a virtual nullity").

For these reasons, the Court finds Doe's harassment claims are time-barred. Grinnell's

motion is granted as to these claims.

          c.        Count V and VI: Non-harassment discrimination

Grinnell argues Doe's non-harassment discrimination claims must be dismissed because Doe fails to allege any action by Grinnell's agents that was motivated by sex-based bias. *See* ECF No. 7-1 at 6–9; ECF No. 17 at 2–4; *see also* ECF No. 7-1 at 3–5. As to Doe's claim concerning discriminatory sanctions, Grinnell argues Doe's allegations do not plausibly link Grinnell's selection of the sanctions to sex-based bias. ECF No. 7-1 at 7–8. Reviewing in tandem the allegations in support of the discrimination claims, the Court finds these arguments are unsuccessful.

As discussed, Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (quoting 20 U.S.C. § 1681). Title IX further implies a private right of action to enforce "its prohibition of intentional sex discrimination." *Id.* In identifying acts of intentional sex discrimination under Title IX, the Eighth Circuit has distinguished its approach from the categorical approach taken by some circuits, *cf. Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), and instead adopted "a simpler, more straightforward pleading standard for Title IX claims arising from university disciplinary proceedings," *Does 1-2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 577 (8th Cir. 2021). Under that standard, Doe has adequately alleged her claims for non-harassment discrimination only if her allegations show or imply "sex was a motivating factor" in Grinnell's disciplinary decision-making. *Rossley v. Drake Univ.*, 979 F.3d 1184, 1192 (8th Cir. 2020) (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). The Eighth Circuit has also cautioned that facts showing bias on the basis of a party's status as a victim of sexual assault is not sufficient to imply sex-based bias. *See Doe v. Univ. of Iowa*, 80 F.4th 891, 898 (8th Cir. 2023).

The Eighth Circuit has provided some guidance on whether the outcome of disciplinary

proceedings reflects the requisite sex-based bias. Reviewing a motion to dismiss, the Eighth Circuit found allegations showing or implying a Title IX administrator reached factual findings "against the substantial weight of the evidence" and chose sanctions "contrary to the ordinary disposition in cases of sexual assault" of the kind at issue "g[a]ve rise to an inference of bias, although not necessarily based on sex." *Doe v. Univ. of Ark.-Fayetteville*, 974 F.3d 858, 864–65 (8th Cir. 2020) (citation omitted). To support the inference of specifically sex-based bias, "[t]he complaint must still link the erroneous outcome to sex discrimination by alleging 'something more.'" *Wells ex rel. Glover v. Creighton Preparatory. Sch.*, 82 F.4th 586, 591 (8th Cir. 2023) (quoting *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2018)); *accord Univ. of Ark.–Fayetteville*, 974 F.3d at 864–65 (finding the allegations established the university was "under pressure" from press attentions and campus protests to treat male students categorically differently from female students). The Eighth Circuit has also emphasized that an "erroneous outcome" theory "simply describe[s] [a] way[] in which a plaintiff might show that sex was a motivating factor." *Rossley*, 979 F.3d at 1192 (quoting *Purdue Univ.*, F.3d at 667).

In light of this caselaw, the Court finds unpersuasive Grinnell's argument that Doe has failed to allege any action by Grinnell, including the selection of sanctions, that reflect sex-based bias. First, the allegations concerning Peterson's actions indicate such bias. Doe alleges Peterson committed several obvious errors—such as misstatements of Grinnell's Title IX Policy—during his investigation and in the production of his report. *See* ECF No. 1 ¶¶ 99–104. She alleges Peterson's misstatement of Grinnell's Title IX Policy shifted a burden of proof from the perpetrator to Doe. *Id.* ¶ 103(g). She also alleges Peterson's investigation systematically excluded the accounts of at least four women who had also been assaulted by the perpetrator. *See id.* ¶¶ 51, 230, 239. Further, as discussed, Doe's allegations indicate Peterson decided to communicate to Doe highly inflammatory questions raised by the student who assaulted her. *See id.* ¶ 104. This action supports the further allegations of Peterson's partiality in part because the perpetrator's questions concerned

Doe's prior sexual experience and this topic was not relevant to the investigation under Grinnell's Title IX Policy. *See* ECF No. 1 ¶ 104; *see also* ECF No. 7-2 at 58–59 (indicating the complainant's prior sexual history is relevant only if the complainant and respondent have a "current or ongoing relationship" or "to the extent it show[s] that someone other than [the r]espondent engaged in the conduct"); ECF No. 1 ¶ 103(i) (identifying as a mistake of Peterson's investigation that the perpetrator and Doe had been in a "romantic" relationship). These allegations—including allegations of action unfavorable to at least five women and other action favorable to the male perpetrator—support the reasonable inference that Peterson's handling of the case was infected by sex-based bias. *Cf. Rossley*, 979 F.3d at 1192. For this reason, Grinnell's argument that Doe failed to allege sex-based bias by Grinnell's agents is unsuccessful.

Doe's allegations concerning Asberry and Newhouse—particularly those involving Newhouse's ultimate selection of sanctions for the perpetrator—also adequately allege sex-based bias. Grinnell's Title IX adjudicator found the perpetrator of Doe's sexual assaults responsible for "Sexual Assault[,] Non-consensual Sexual Intercourse" and "Sexual Assault[,] Non-consensual Sexual Contact." ECF No. 1 ¶ 145. In light of these findings, Newhouse, Grinnell's Dean of Students, determined the perpetrator would be sanctioned by instating a no-contact order, placing him on probation through the remaining month of his career at the school, barring him from social activities through the same period, and barring him from the graduation activities and alumni events that Doe chose to attend. *See id.* ¶¶ 5, 146, 148; ECF No. 7-2 at 41, 66. As in *University of Arkansas–Fayetteville*, these sanctions carried a markedly different level of severity in comparison to sanctions applied to perpetrators of the same kinds of sexual assault. *Cf.* 974 F.3d at 864–65. Specifically, Grinnell's Title IX Policy states a perpetrator "who is found responsible for non-consensual [s]exual intercourse will typically receive educational outcomes (sanctions) of suspension or dismissal, including a ban from campus." ECF No. 7-2 at 67. The policy further states the "Senior Official," Newhouse in this instance, will not "deviate from the range of

recommended outcomes unless compelling justification exists to do so." *Id.* at 66; *see id.* at 41; ECF No. 1 ¶ 5. In this case, Doe's adjudicator found that the perpetrator responsible for both non-consensual sexual intercourse and a second incident of sexual assault, ECF No. 1 ¶ 145, but Newhouse determined the perpetrator would not be suspended, dismissed, or banned, *id.* ¶ 148. Such a decision, "inconsistent with ordinary practice on sanctions," supports a reasonable inference of bias. *Cf. Univ. of Ark–Fayetteville*, 974 F.3d at 865.

There is further support of the inference of bias in the allegations of systematic mistakes and delays, caused in part by Asberry and Newhouse. Throughout the complaint, Doe's allegations describe a slow-moving bureaucracy with administrators who failed to fully inform Doe of her rights under Grinnell's Title IX Policy. *See, e.g.*, ECF No. 1 ¶ 75 (indicating Asberry, Grinnell's Title IX coordinator, failed to inform Doe she could file an anonymous complaint); *id.* ¶ 144 (indicating Asberry first provided Doe with a list of on-campus and off-campus resources for victims of sexual assault over two years after she first reported her experiences of sexual assault to agents of Grinnell and over a week after the hearing on her complaint). Notable among the errors of Grinnell's agents was an error committed by Asberry, Newhouse, and Peterson, who each failed to send the perpetrator a two-page complaint document for nearly ten months after the complaint was processed. *Id.* ¶ 137. This error resulted in a two-month delay in the hearing on Doe's complaint. *Id.* Newhouse later served as the Grinnell administrator who determined the sanctions against the perpetrator in reliance on the findings of responsibility and recommendations. ECF No. 7-2 at 65–67.[6] These errors, viewed collectively, support the inference of a bias against victims of sexual assault.

Without more these errors are insufficient to support an inference of sex-based bias.

---

[6] The adjudicator's findings and recommendations were based on Peterson's investigative report, as well as written statements responding to the report and additional evidence introduced at the hearing. ECF No. 7-2 at 62.

*Cf. Univ. of Iowa*, 80 F.4th at 898. But Doe does allege "something more," and her further allegations link the errors and erroneous outcome to sex discrimination. *Cf. Wells*, 82 F.4th at 591. Doe alleges she consistently alerted Grinnell administrators, including Asberry, of allegations published to the @MeTooGrinnell account that the perpetrator had assaulted other female students. ECF No. 1 ¶ 49, 62, 91. She further alleges Peterson's investigation failed to collect evidence of the perpetrator's "pattern of similar conduct" and "no corroborating evidence was ever introduced." *Id.* ¶ 230. Doe also alleges more broadly that "Grinnell College also failed to investigate the claims of multiple other women against the [p]erpetrator." *Id.* ¶ 232. Moreover, as discussed above, the behavior of Asberry and Peterson reflected deliberate indifference to a sexually hostile educational environment created by continued sexual harassment by the perpetrator—indifference that continued at least until the hearing in April 2022. *See supra* Section IV.A.1.b. These allegations provide the backdrop against which Doe alleges Newhouse favored a male student by issuing sanctions less severe than typical for students found responsible for "[n]on-consensual [s]exual [i]ntercourse," ECF No. 1 ¶ 145; *see also id.* ¶ 233; ECF No. 7-2 at 67, and that burdened a female student, Doe, by requiring her to attend Grinnell's functions in order to ensure the relief she sought—namely a meaningful punishment for the perpetrator, ECF No. 1 ¶ 148. These allegations are sufficient to assert "something more" linking the selection of atypical sanctions to sex-based bias. *Cf. Wells*, 82 F.4th at 591. Accordingly, Doe's allegations adequately support the conclusion that sex was a motivating factor in the erroneous outcome of the disciplinary proceedings. *Cf. Rossley*, 979 F.3d at 1192.

For these reasons, the Court finds Grinnell is incorrect in arguing Doe failed to allege sex-based discrimination. Some of the events alleged are discrete acts of discrimination that occurred before the start of the applicable period—beginning on October 10, 2021—under the statute of limitations. These include the discrimination by Peterson, which occurred before October 8, 2021. ECF No. 1 ¶ 105. But Newhouse's determination of sanctions did not occur

until April 19, 2022, a date within the limitations period. *See id.* ¶¶ 144–45. For this reason, Doe's discrimination claims are not time-barred. *Cf. Morgan*, 536 U.S. at 113 (noting time-barred discrete acts may, nonetheless, serve "as background evidence in support of a timely claim"). Accordingly, Grinnell's motion is denied as to Counts V and VI.

c.      Counts III and IV

Doe's Counts III and IV allege Grinnell retaliated against her in various ways after she reported her experiences of sexual assault to Grinnell staff. ECF No. 1 ¶¶ 187–220. The Supreme Court has recognized "Title IX implie[s] a right of action for retaliation to enforce its prohibition on intentional discrimination." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021) (citing *Jackson*, 544 U.S. at 173). In analyzing retaliation claims under Title IX, courts ask whether the plaintiff partook in a protected activity—like complaining of sex discrimination—suffered an adverse action, and whether there is a causal connection between the two. *Id.* at 1203–04; *see also id.* at 1203 (noting the Eighth Circuit has held "the Supreme Court's interpretation of Title VII properly informs our examination of Title IX" (internal quotation marks and citation omitted)). Grinnell, however, seeks partial dismissal of Doe's retaliation claims on other grounds. Grinnell's only argument is that the applicable statute of limitations bars the parts of Doe's retaliation claims relying on retaliatory actions that occurred before October 10, 2021. ECF No. 7-1 at 6–8. As discussed above, in this case the applicable statute of limitations bars claims reliant on discrete acts like alleged retaliation to the extent those acts occurred before October 10, 2021. *See supra* Section A.1.a. For this reason, this aspect of Grinnell's motion is granted.

Doe's retaliation claims, where pled with sufficient specificity to identify discrete acts of alleged retaliation, include several acts of retaliation, some close enough in time to escape the statute of limitations time-bar, some not so close. For instance, Doe alleges Grinnell retaliated against her by: "[f]ailing to inform [Doe] about the Title IX process on Grinnell's campus during

multiple encounters with at least six different administrators and agents of Grinnell College." ECF No. 1 ¶ 212(i). This allegation refers to Doe's meetings with several Grinnell staff members between January 28, 2020 and April 26, 2021, in which those staff members did not provide full information about Grinnell's Title IX complaint process following Doe's disclosure of her experiences of sexual assault. *See e.g.*, *id.* ¶¶ 22–23, 30–31, 84–85. All of these meetings occurred before October 10, 2021, so even if they were acts of retaliation, they are time-barred by the statute of limitations. *Cf. Mayer*, 2018 WL 10344272, at *5. Other allegedly retaliatory actions, however, are not time-barred. For example, Doe alleges Grinnell retaliated against her by "[s]tripping [Doe] of academic honors in two of her major areas of study." ECF No. 1 ¶ 195(g). Doe's other allegations imply this action occurred in the spring of 2022, around the time of her graduation and after October 10, 2021. *See id.* ¶¶ 2, 153.

Given the dates of the several allegedly retaliatory acts, the Court grants Grinnell's motion for partial dismissal of her Title IX retaliation claims: alleged actions or omissions that occurred prior to October 10, 2021, cannot form the basis of Doe's retaliation claims. To the extent Doe seeks to assert retaliation claims dependent on such allegations, those aspects of her claims are dismissed as time-barred. *Cf. Mayer*, 2018 WL 10344272, at *5; *Morgan*, 536 U.S. at 113 (noting time-barred discrete acts may, nonetheless, serve "as background evidence in support of a timely claim").

**2.    Unresisted aspects of Grinnell's motion: Doe's Fourteenth Amendment claim, her breach of contract claim, and her request for punitive damages**

Grinnell moves to dismiss Doe's claim against it under the Fourteenth Amendment, parts of Doe's breach of contract claim against it, and Doe's request for punitive damages in connection with her Title IX claims. ECF No. 7-1 at 11–20. Grinnell provides argument in support of each request. *See id.* Doe, however, fails to address any of these arguments or requests directly. *See generally* ECF No. 15, ECF No. 15-1. Doe's position on these claims appears to be that even if its

dismissal requests are not directly resisted, Grinnell has the burden of proving no cognizable claim for relief exists as to these claims. ECF No. 15 ¶ 4 (citing *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021)). The case cited by Doe affirms the proposition that a court "impermissibly fail[s] to hold the movant to [its] burden by granting a Rule 12(b)(6) motion on the sole basis that it is unopposed." *Marcure*, 992 F.3d at 631.

*Marcure* is not binding on this Court. Further, it is inconsistent with the local rules of the Southern District of Iowa. *See Anderson v. Nationwide Mut. Ins.*, 3:07-cv-00097-RP-RAW, 2007 WL 9711270, at *1 n.1 (S.D. Iowa Dec. 5, 2007) ("Local Rule [7](f) provides: 'If no timely resistance to a motion is filed, the motion may be granted without notice.' In light of [the plaintiff's] failure to resist the Motion to Dismiss, the Court may grant [the defendant's] motion on that basis alone."); LR 7; *see also Marcure*, 992 F.3d at 631–32 (discussing two circuit courts that do not prohibit district courts from granting motions to dismiss on the basis of the failure to resist).[7] Nonetheless, the Court considers the unresisted aspects of Grinnell's motion on the merits and grants those aspects on such grounds. *Cf. Anderson*, 2007 WL 9711270, at *1, *1 n.1 (acknowledging the court addresses the merits of the motion despite the failure to resist).

a.    Doe's Fourteenth Amendment claim

Grinnell argues Doe's Fourteenth Amendment claim (Count VII) must be dismissed because Doe alleges no facts that would indicate Grinnell is a state actor. ECF No. 7-1 at 11–12. Grinnell's argument is persuasive. The Fourteenth Amendment "erects no shield against merely

---

[7] The Eighth Circuit has not directly addressed the issue raised in *Marcure*, and other districts within this circuit vary in their treatment of the issue. *see Abram v. Sohler*, No. 8:22-CV-152, 2022 WL 3108101, at *3 (D. Neb. Aug. 4, 2022) ("[T]he Court agrees with the majority of the federal courts of appeal that have held that merely failing to respond to a motion to dismiss, without more, does not warrant dismissal."); *Huff v. Canterbury Park Holding Corp.*, No. 22-cv-1922 (WMW/ECW), 2023 WL 6201531, at *13 (D. Minn. Sept. 22, 2023) ("Courts in this District have reached different conclusions as to whether a plaintiff's failure to oppose a motion to dismiss warrants dismissal.") (collecting cases), *vacated in part and remanded on other grounds*, No. 23-3151, 2024 WL 1714257 (8th Cir. Apr. 22, 2024).

private conduct, however discriminatory or wrongful" only action that "may fairly be said to be that of the States." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). State actor status may be imputed to a private party, but only in rare circumstances, such as where there is "pervasive entwinement" between the private entity and the state. *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (citation omitted). Receipt of state or federal grants and contracts is not enough for state actor status. *Doe v. Oberlin Coll.*, 60 F.4th 345, 353–55 (6th Cir. 2023). Doe's complaint provides no allegations that would support the conclusion that Grinnell has state actor status. *See* ECF No. 1 ¶¶ 3, 249–57. For this reason, Grinnell's motion to dismiss Doe's Fourteenth Amendment claim (Count VII) against it is granted.

### b.    Doe's claim for breach of contract

Grinnell moves to dismiss several parts of Doe's breach of contract claim (Count VIII). ECF No. 7-1 at 11–20. Grinnell assumes its Title IX Policy is a contract between Doe and Grinnell for purposes of the motion. *Id.* at 12 n.2. But Grinnell moves to dismiss the breaches alleged at sub-paragraphs 260(f) and (p), arguing these are preempted by the Iowa Civil Rights Act because they allege breach through bias or discrimination. *Id.* at 11–12. Grinnell further moves to dismiss the breaches alleged at sub-paragraphs 260(h), (i), (k), (p), (q), (w), (dd), and (ff), arguing these aspects of her claim have no relationship to any term or provision in the Title IX Policy—or if they do, that the relevant provision has not been violated. *Id.* at 12–20. The Court finds these arguments persuasive.

The Iowa Civil Rights Act prohibits educational institutions from subjecting any person to discrimination on the basis of sex or gender in any academic "program or activity except athletic programs." Iowa Code § 216.9(1). "To the extent the [Iowa Civil Rights Act] provides a remedy for a particular discriminatory practice, its procedure is exclusive . . . ." *Smidt v. Porter*, 695 N.W.2d 9, 17 (Iowa 2005) (citations omitted). Accordingly, a breach of contract claim that alleges violation due to sex or gender discrimination or a failure to prevent sex or gender

discrimination is thus preempted by the Iowa Civil Rights Act. *See Waterman v. Nashua-Plainfield Comm. Sch. Dist.*, No. 07-0521, 2008 WL 141169, at *2 (Iowa Ct. App. Jan. 16, 2008). Doe's complaint alleges Grinnell breached its Title IX Policy by "[f]ailing to protect [Doe] from sex-based discrimination." ECF No. 1 ¶ 260(f). Her complaint further alleges Grinnell breached the Policy by publishing a preliminary report that was riddled with factual errors and "obvious instances of gender bias." *Id.* ¶ 260(p). These allegations of breach allege either failure to prevent sex discrimination or gender discrimination. Assuming, arguendo, the Policy is a contract, breach of contract claims alleging such breach are preempted by the Iowa Civil Rights Act. *Cf. Waterman*, 2008 WL 141169, at *2. Grinnell's motion to dismiss the aspects of Doe's breach of contract claim alleging discrimination or failure to prevent discrimination at sub-paragraphs 260(f) and 260(p) are granted.

Further, a breach of contact claim fails if the facts do not show the defendant breached a duty under the contract. *See Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110–11 (Iowa 2013). When interpreting a contract to identify a party's duties, the Court looks to "the language contained within the four corners of the document." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210, 216 (Iowa 2017) (citation omitted).

Subparagraph 260(h) alleges Grinnell breached the Policy by "[f]ailing to report the perpetrator for the violent rape and sexual assault of [Doe] after receiving information from [Doe] during multiple encounters with at least six different administrators and agents of Grinnell College." ECF No. 1 ¶ 260(h). Similarly, subparagraph 260(i) alleges Grinnell breached the Policy by:

> Failing to report the perpetrator for rape and sexual assault after receiving information from [Doe] and her father during multiple encounters with at least three different administrators of Grinnell College that there were numerous other allegations by other Grinnell College students that the perpetrator had committed other acts of rape and sexual assault on Grinnell's campus.

ECF No. 1 ¶ 260(i). Grinnell concedes the Title IX Policy imposes a reporting obligation, but

it argues the individuals with whom Doe shared her own experiences of assault and other allegations against the perpetrator either were not within this obligation or satisfied the obligation. ECF No. 7-1 at 18–19.

Grinnell's position is not entirely persuasive. Grinnell's Title IX Policy states, "with the exception of designated confidential resources, staff and faculty members and designated student leaders are **required** to share disclosures of Prohibited Behavior with the Title IX coordinator." ECF No. 7-2 at 15 (emphasis in original). Professionals designated as confidential resources included all staff at "Student Health and Wellness," including receptionists and nursing staff, and Deanna Shorb, Dean of Religious Life and Chaplain. *Id.* at 29. The administrators and agents to whom Doe or her father disclosed her experiences of assault were, Wine, an employee at Grinnell Student Health; Newell, a Grinnell nurse; Kohl, an outside, mental health professional; Harris, Grinnell's president; Asberry, Grinnell's Title IX coordinator; and Shorb, Grinnell's Dean of Religious Life. *See id.* ¶¶ 22–23, 25, 37, 51–59, 69–70. Wine, Newell, Shorb, Kohl, and Asberry were not within the Policy's reporting requirements. Wine, Newell and Shorb were confidential resources; Kohl was not a staff or faculty member of Grinnell; and Asberry was the coordinator to whom reports were made under the policy. *See id.* ¶¶ 22–23, 25, 37, 53, 69–70; ECF No. 7-2 at 14–15, 29. But Harris was an employee of Grinnell with a reporting obligation, and when the Court draws all reasonable inferences in Doe's favor, her allegations indicate Harris never reported the sexual harassment to Asberry. ECF No. 1 ¶¶ 53–54, 56–57 (indicating Harris told Doe's father she would ask Asberry to contact Doe but further indicating Asberry did not contact Doe); ECF No. 7-2 at 15. Further, Doe alleges her father disclosed to Harris both Doe's experiences of assault and the allegations of other instances of assault by the perpetrator. ECF No. 1 ¶ 51. For these reasons, Grinnell's arguments as to Harris are unavailing and for this reason its motion is denied as to subparagraph 260(h) and (i).

Subparagraph 260(k) alleges Grinnell breached the Policy by "[r]eferring [Doe] to a

theologian after she disclosed her violent rape and sexual assault to Grinnell's Title IX department." *Id.* ¶ 260(k). A referral to Shorb, however, was not a violation of the Policy because the Policy lists Shorb as a resource who can provide "information and support." *See* ECF No. 7-2 at 29. For this reason, Grinnell's motion is granted as to subparagraph 260(k).

Subparagraph 260(p), as noted, alleges Grinnell breached the Policy by publishing a preliminary report "riddled with factual errors." ECF No. 1 ¶ 260(p). The Policy, however, provides that the investigator will make the information gathered available to the parties prior to submission of the final report. ECF No. 7-2 at 59–60. It does not create an obligation to ensure no errors are present in the preliminary report. *Id.* For this reason, Grinnell's motion is granted as to the remaining aspects of subparagraph 260(p).

Subparagraph 260(q) alleges Grinnell breached the Policy by "publishing to [Doe] a list of highly inflammatory and offensive additional questions which the perpetrator requested be asked of [Doe.]" ECF No. 1 ¶ 260(q). As discussed above, Peterson allowed the perpetrator to sexually harass Doe by publishing his questions to her. *See supra* Section IV.A.1.b. But insofar as Doe seeks to argue this action by Peterson breached the Policy on Grinnell's behalf, this argument is not persuasive. Peterson's complicity in the harassment of Doe is preempted from serving as a breach of contract theory. *See Waterman*, 2008 WL 141169, at *2. For this reason, Grinnell's motion is granted as to subparagraph 260(q).

Subparagraphs 260(w) and (ff) allege Grinnell violated the Policy by "[s]electing sanctions against the perpetrator that require [Doe's] actual ongoing involvement for the entire duration of her life; which has had the impact of endlessly victimizing [Doe], rather than allowing her any opportunity for closure or recovery." ECF No. 1 ¶¶ 260(w), (ff). The Policy submits the selection of sanctions to the discretion of the "Senior Official," in this case Newhouse. ECF No. 7-2 at 41, 66–67; ECF No. 1 ¶ 5. It identifies factors the Senior Official must consider and identifies sanctions the Senior Official "general[ly]" must select upon the finding of particular offenses by

the perpetrator. ECF No. 7-2 at 66–67. Although the Policy confers discretion in this manner, Grinnell's agents had a contractual obligation to exercise this discretion "in a reasonable manner" under the implied covenant of good faith and fair dealing, which "inheres in all contracts." *See McMahon v. Transamerica Life Ins. Co.*, No. C17-149-LTS, 2018 WL 3381406, at *7 (N.D. Iowa Jan. 18, 2019) (first quoting *Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 913 (Iowa 1980), then quoting *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 730 (Iowa 2014).[8] For these reasons, Grinnell's arguments as to subparagraphs 260(w) and (ff) are unavailing and its motion is denied as to these subparagraphs.[9]

Subparagraph 260(dd) alleges Grinnell violated the Policy by "[s]tripping [Doe] of academic honors in two of her major areas of study." ECF No. 1 ¶ 280(dd). The Policy, however, does not provide any right to obtain academic honors. For this reason, Grinnell's motion is granted as to subparagraph 260(dd).

### c.   Request for punitive damages

Grinnell seeks to strike Doe's request for punitive damages in connection with her Title IX claims. ECF No. 7-1 at 20. It argues punitive damages are not available for such claims. *Id.* Grinnell's position is persuasive. *See Loera v. Kingsville Indep. Sch. Dist.*, No. 2:21-CV-00031, 2023 WL 6130548, at *4 (S.D. Tex. Sept. 19, 2019) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022)) (explaining punitive damages are not available for Title IX claims under *Cummings* because "[i]t is beyond dispute that Title IX is such spending clause legislation" that cannot give rise to a claim for punitive damages); *Lewis v. Bd. of Supervisors of La. State*

---

[8] This again assumes, arguendo, that the Policy is a contract between Grinnell and Doe.

[9] Doe asserts a separate count for breach of the implied covenant that alleges breach by failing "to assign an appropriate sanction against the Perpetrator." ECF No. 1 ¶ 266(f). But this does not alter the Court's conclusion concerning the subparagraphs of Doe's breach of contract claim because, under Iowa law, a breach of the implied contract "may give rise to a breach of contract claim, but it does not create a separate cause of action." *Stanczyk v. Prudential Ins. Co. of Am.*, No. 15-CV-0097-CJW, 2017 WL 11454717, at *20 (N.D. Iowa Apr. 20, 2017) (citing *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011)).

*Univ. & Mech. Coll.*, No. 21-198-SM-RLB, 2023 WL 7395431, at *2 (M.D. La. Nov. 8, 2023) (same). Accordingly, Grinnell's motion is granted as to Doe's request for punitive damages under Title IX.

For the reasons set forth above, Doe's Fourteenth Amendment claim, the allegations of breach of contract claim set forth at subparagraphs 260(f), (k), (p), (q), and (dd), and her requests for punitive damages in connection with her surviving Title IX claims, are dismissed. Grinnell's motion to dismiss is denied as to the allegations of her breach of contract claim set forth at subparagraphs 260(h), (i), (w), and (ff).

### B.     The Individual Moving Defendants' Motions to Dismiss

The Individual Moving Defendants have moved to dismiss all claims against them. ECF No. 8; ECF No. 16.[10] Doe did not resist these motions. *See generally* ECF No. 15; ECF No. 15-1. Although Doe's failure to resist is a sufficient reason for denial under Local Rule 7, the Court addresses the merits of the motion. *Cf. Anderson*, 2007 WL 9711270, at *1 n.1. The Court grants these motions on the merits.

### 1.     Doe's Title IX claims against the Individual Moving Defendants

The Individual Moving Defendants argue Doe's Title IX claims against them must be dismissed because Doe has not alleged the Individual Moving Defendants are subject to the statute. ECF No. 8-1 at 1–2; ECF No. 16-1 at 1–2. "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 256, 257 (2009). Doe's allegations do not establish that the Individual Moving Defendants fall within the category of institutions or programs that receive federal funds. *See* ECF No. 1 ¶¶ 4–10. For this reason, the Individual

---

[10] The additional Defendants Shorb and Kohn are not parties to any motions before the Court.

Moving Defendants' motions to dismiss Doe's Title IX claims against them are granted. *Cf. Fitzgerald*, 555 U.S. at 257. These claims are dismissed.

### 2.    Doe's Fourteenth Amendment claim against the Individual Moving Defendants

The Individual Moving Defendants argue Doe's Fourteenth Amendment claim against them must be dismissed because none of them are state actors. ECF No. 8-1 at 2–3; ECF No. 16-1 at 2. As discussed above, state actor status may be imputed to a private party, but only in rare circumstances, such as where there is "pervasive entwinement" between the private entity and the state. *Wickersham*, 481 F.3d at 597. Doe alleges no facts establishing that the Individual Moving Defendants have state actor status. *See generally* ECF No. 1. For this reason, the Individual Moving Defendants' motions to dismiss Doe's Fourteenth Amendment claim against them are granted. This claim is dismissed.

### 3.    Doe's breach of contract and implied covenant claims against the Individual Moving Defendants

The Individual Moving Defendants argue Doe's breach of contract and implied covenant claims must be dismissed because the only contract established by the facts is the Policy operating as a contract between Doe and Grinnell. ECF No. 8-1 at 3–4; ECF No. 16-1 at 3–4. A breach of contract claim requires that Doe's allegations show a contract between Doe and the defendant at issue. *See Iowa Mortg. Ctr.*, 841 N.W.2d at 111. Doe alleges Grinnell's Title IX Policy created "a contractual relationship between Grinnell and its students." ECF No. 1 ¶ 259. Her allegations do not indicate the Individual Moving Defendants are parties to that contract. For this reason, the Individual Moving Defendants' motions as to the breach of contract claim must be granted. Further, because Iowa does not recognize a claim for breach of the implied covenant as a cause of action independent from breach of contract, *Stanczyk*, 2017 WL 11454717, at *20, the Individual Moving Defendants' motions as to the implied covenant claim must be granted on the same grounds. These claims are dismissed.

For the reasons set forth above, all claims against the Individual Moving Defendants are dismissed.

## V.    CONCLUSION

For the reasons discussed, Grinnell's motion for partial dismissal of the claims against it is granted in part and denied in part. Grinnell's request for dismissal is granted as to Doe's harassment claims, Counts I and II, but is denied as to Doe's discrimination claims, Counts V and VI. Grinnell's request for dismissal of the aspects of Doe's retaliation claims concerning acts of retaliation prior to October 10, 2021, is also granted. Grinnell's request for dismissal of Doe's Fourteenth Amendment claim against it is granted. Grinnell's request for dismissal of parts of Doe's breach of contract claim against it is granted in part and denied in part. The request is granted as to the alleged breaches set forth at subparagraphs 260(f), (k), (p), (q), and (dd). The request is otherwise denied. Last, Grinnell's request to dismiss Doe's request for punitive damages as relief for her Title IX claims is also granted. As to Asberry, Newhouse, Newell, Harris, and Peterson's motions to dismiss all claims against them, these motions are granted.

**IT IS ORDERED** that Defendant Grinnell College's Partial Motion to Dismiss, ECF No. 7, is **GRANTED IN PART AND DENIED IN PART**:

Counts I and II are **DISMISSED** as to Defendant Grinnell College.

Aspects of Count III and IV concerning actions prior to October 10, 2021, are **DISMISSED** as to Defendant Grinnell College.

Requests for punitive damages under Counts III–VI are **DISMISSED** as to Defendant Grinnell College.

Count VII and the aspects of Count VIII set forth at paragraph 260(f), (k), (p), (q), and (dd) are **DISMISSED** as to Defendant Grinnell College.

**IT IS FURTHER ORDERED** that Defendants Bailey Asberry, Ben Newhouse, Sarah Newell, and Anne Harris's Motion to Dismiss, ECF No. 8, is **GRANTED**:

All counts are **DISMISSED** as to Defendants Bailey Asberry, Ben Newhouse, Sarah Newell, and Anne Harris.

**IT IS FURTHER ORDERED** that Defendant Demetrius Peterson's Motion to Dismiss, ECF No. 16, is **GRANTED**:

All counts are **DISMISSED** as to Defendant Demetrius Peterson.

Plaintiff Jane Doe is directed to file an amended complaint in conformity with this opinion, limited to the counts and aspects of counts that will proceed. This amended complaint shall be filed within fourteen days of this order.

**IT IS SO ORDERED.**

Dated this 9th day of May 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE